JUDGE KOELTL

John F. Collins (JC 9324)
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000

07 CV

3605
ECF CASE

David A. Ettinger (P26537)
Jeffrey H. Kuras (P66036)
HONIGMAN, MILLER, SCHWARTZ AND COHN, LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226-3506
(313) 465-7368

RECEIVED
MAY 07 2007
U.S.D.C. S.D. N.Y.
CASHIERS

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
USA BASEBALL, THE NATIONAL HIGH
SCHOOL BASEBALL COACHES ASSOCIATION,
DR. PETER BERG, JUAN HERNANDEZ, DENNIS
CANALE, MEL ZITTER, MICHAEL CRUZ, TITO
NAVARRO, JOHN TORRES, EASTON SPORTS,
INC., WILSON SPORTING GOODS CO.,
RAWLINGS SPORTING GOODS COMPANY, and
HILLERICH & BRADSBY CO.

                              Plaintiffs,

        - against -                              Civil Action No.

CITY OF NEW YORK,

                              Defendant.

------------------------------------------------------------------X


**COMPLAINT FOR INJUNCTIVE RELIEF**

## INTRODUCTION

1.      This Complaint is brought by and on behalf of affected coaches, players, parents and bat manufacturers against the City of New York.  Plaintiffs seek (a) a declaratory judgment that the newly adopted ordinance, Local Law 20 for the year 2007, Title 10 of the New York City Administrative Code, Section 10-165, prohibiting the use of metal and nonwood composite baseball bats in New York high school baseball play (the "Bat Ordinance"), is unconstitutional and unlawful, and (b) a preliminary and permanent injunction preventing enforcement of the Bat Ordinance.

2.      The Bat Ordinance arbitrarily and unjustifiably prohibits the use of bats that are preferred by the vast majority of high school players, coaches and teams, and that are already carefully regulated by the National Federation of State High School Associations ("NFHS"). The New York City Council failed to identify any scientific support for its assertion that this prohibition is needed to protect public safety.  In contrast, numerous parties produced substantial scientific evidence that prove that the use of metal and nonwood composite bats does not endanger player safety.

3.      Indeed, in vetoing the bill, Mayor Bloomberg stated that "Introductory Number 341-A's ban on metal baseball bats in the City high school baseball games is unsupported by any empirical data, and risks placing City high school baseball players at a competitive disadvantage."  Nevertheless, the New York City Council arbitrarily overrode Mayor Bloomberg's veto and enacted the Bat Ordinance.

4.      The Bat Ordinance is harmful to high school players, coaches, schools and high school baseball, as well as to bat manufacturers.  It will increase costs for New York high school

players and teams, make high school baseball in New York less enjoyable and less competitive, and not improve safety in any way.

5.    In particular, among the deficiencies of the Bat Ordinance are the following:

a.    The Bat Ordinance prohibits metal and nonwood composite bats without any basis for doing so, relying on unfounded rumors and scare tactics;

b.    The Bat Ordinance establishes an absolute prohibition against metal and nonwood composite bats without any effort to regulate them or any finding that regulation would be impractical;

c.    The Bat Ordinance arbitrarily discriminates against metal bats by completely prohibiting them while permitting wood composite bats, even though wood composite bats are capable of hitting baseballs at speeds equal to any metal bat;

d.    The Bat Ordinance arbitrarily discriminates against composite bats by allowing the use of "wood composite" bats, some of which are composed of 95% composite (epoxy, fiberglass and graphite) materials and less than 5% wood, and completely prohibiting bats made of 100% composite material.  It does so despite the lack of any evidence that this tiny amount of wood in some wood composite bats makes them any more safe than nonwood composite bats; and

e.    The Bat Ordinance irrationally and impermissibly delegates to Major League Baseball the determination as to which wood composite bats shall be permitted in New York City high school play based on the standards

3

Major League Baseball utilizes for minor league professional play. It does so even though those standards are irrelevant to the welfare of high school baseball players, and even though Major League Baseball applies the very same tests that are already utilized in regulating today's metal and nonwood composite bats.

6.      The Bat Ordinance should be declared unlawful and its performance enjoined.

## THE PARTIES

7.      USA Baseball is a national governing body that exists by act of Congress passed in 1978 and is headquartered in Raleigh, North Carolina. USA Baseball is also the umbrella organization for numerous baseball associations, including American Legion baseball, Pony League baseball and Babe Ruth League baseball. USA Baseball's activities include, among others, the sponsorship of the Youth National Team and the Junior National Team. These are teams of high school age players who participate in international competition. USA Baseball's purpose is to promote and develop amateur baseball at the grass roots level.

8.      The National High School Baseball Coaches Association ("BCA") is an Arizona non-profit corporation headquartered in Tempe, Arizona. Its members include high school baseball coaches in New York City. Its purpose is to promote the interests of high school baseball coaches throughout the United States.

9.      Dr. Peter Berg is a natural person domiciled in the City of New York. His minor son plays high school baseball in New York City. Dr. Berg has purchased and may in the future purchase baseball bats for his son to use in New York City high school baseball games. Dr. Berg is a plaintiff in his own right and on behalf of his minor son.

4

10.     Juan Hernandez is a natural person domiciled in the City of New York. His minor son plays high school baseball in New York City. Hernandez has purchased and may in the future purchase baseball bats for his son to use in New York City high school baseball games. Hernandez is a plaintiff in his own right and on behalf of his minor son.

11.     Dennis Canale is a natural person domiciled in the City of New York. He is the baseball coach for Xaverian High School. Canale is a plaintiff in his own right and as "next friend" for the minors who play on the Xaverian High School baseball team. Canale is directly and intensively involved with the Xaverian High School baseball team. He possesses first hand knowledge of the bat use of these players. Canale joins in this lawsuit out of a good faith concern for the welfare of his players and possesses first-hand knowledge of the effect the Bat Ordinance will have on these players.

12.     Mel Zitter is a natural person domiciled in the City of New York. He is an assistant coach at Xaverian High School and he is the manager of the Youth Service League, a league that includes numerous traveling non-scholastic baseball teams. Zitter is a plaintiff in his own right and as "next friend" for the minors that he coaches at Xaverian High School and who play in the Youth Service League. He possesses first hand knowledge of the bat use of these players. Zitter joins in this lawsuit out of a good faith concern for the welfare of his players and possesses first-hand knowledge of the effect the Bat Ordinance will have on these players.

13.     Michael Cruz is a natural person domiciled in the City of New York. His minor son plays high school baseball in New York City. Cruz has purchased and may in the future purchase baseball bats for his son to use in New York City high school baseball games. Cruz is a Plaintiff in his own right and on behalf of his minor son.

14.     Tito Navarro is a natural person domiciled in the City of New York. His minor son plays high school baseball in New York City. Navarro has purchased and may in the future purchase baseball bats for his son to use in New York City high school baseball games. Navarro is a Plaintiff in his own right and on behalf of his minor son.

15.     John Torres is a natural person domiciled in the City of New York. His minor son plays high school baseball in New York City. Torres has purchased and may in the future purchase baseball bats for his son to use in New York City high school baseball games. Torres is a Plaintiff in his own right and on behalf of his minor son.

16.     Easton Sports, Inc. ("Easton") is a California corporation with its principal place of business in Van Nuys, California. Easton, among other things, manufactures and sells aluminum, nonwood composite and wood baseball bats. Easton's premier best-selling bat models are its metal and nonwood composite bats, and it devotes substantial resources to research, development, innovation and marketing of new models of metal and nonwood composite bats intended to be more attractive to players. Easton's baseball bats are currently sold in, among other locations, New York City.

17.     Wilson Sporting Goods Company ("Wilson") is a Delaware corporation with its principal place of business in Chicago, Illinois. Wilson, among other things, distributes Demarini metal, wood composite and nonwood composite baseball bats. Wilson's premier best-selling bat models are its metal and nonwood composite bats, and it devotes substantial resources to research, development, innovation and marketing of new models of metal and nonwood composite bats intended to be more attractive to players. These baseball bats are currently sold in, among other locations, New York City.

18.     Rawlings Sporting Goods Company ("Rawlings") is a Delaware corporation with its principal place of business in St. Louis, Missouri. Rawlings, among other things, manufactures and sells aluminum, nonwood composite and wood baseball bats. Rawlings' premier best-selling bat models are its metal and nonwood composite bats, and it devotes substantial resources to research, development, innovation and marketing of new models of metal and nonwood composite bats intended to be more attractive to players. Rawlings' baseball bats are currently sold in, among other locations, New York City.

19.     Hillerich & Bradsby Co. ("H&B") is a Kentucky corporation with its principal place of business in Louisville, Kentucky. H&B, among other things, manufactures and sells aluminum, nonwood composite, wood composite, and wood baseball bats under the Louisville Slugger name. H&B devotes substantial resources to research, development, innovation and marketing of new models of metal and nonwood composite bats intended to be more attractive to players. H&B's baseball bats are currently sold in, among other locations, New York City.

20.     The City of New York is a municipality of the State of New York, governed by statutes of the State of New York, and the New York and United States Constitutions.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). This Court has supplemental jurisdiction over the state law claims pled in this Complaint pursuant to 28 U.S.C. § 1367. This Court has jurisdiction to issue a declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, *et seq.*

22.    Venue is appropriate in the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391(b), as a substantial part of the events or omissions giving rise to this claim occur within this jurisdictional district and Defendant resides within this judicial district.

## BACKGROUND

23.    The baseball bats used by high school baseball teams in this country may be made of wood, composite materials or metal. However, in the early 1970s, when metal bats were introduced, metal bats became the overwhelmingly popular choice among high school baseball teams. More recently, many bats are "composites," composed of epoxy, graphite and fiberglass. A small minority of composite bats are "wood composites." The vast majority of all baseball bats used by high school teams are metal or nonwood composite bats. The bat manufacturer plaintiffs and the other firms manufacturing metal and nonwood composite bats have competed aggressively with one another to develop lighter, durable and more effective bats, which are easier for baseball players to swing, and make the game more exciting and competitive.

24.    Amateur baseball as played with metal and nonwood composite bats is extremely safe:

a.    The National Collegiate Athletic Association's ("NCAA") Injury Surveillance System ("ISS") has found that men's baseball is one of the safest of the 15 NCAA sports surveyed, and has a game injury rate lower than (for example) men's and women's soccer and men's and women's basketball.

b.    Very few of the extremely small number of baseball injuries are due to

8

batted balls. According to the ISS, batted ball injuries to pitchers are only about 3% of all reported baseball injuries.

c.    The use of aluminum bats in Little League Baseball has also consistently been shown to be safe. Little League Baseball (whose participants include more than 2.3 million players from ages 5-18) reported that the number of insurance claims from injuries to pitchers decreased by 86% between 1992 and 2004, even as the number of participants increased. Since Little League began keeping injury statistics in the 1960's, there have been six fatalities due to batted balls from wood bats, and only two fatalities caused by batted balls from metal bats. Little League Baseball has not experienced a single fatality caused by a batted ball from a metal bat since Little League adopted new metal bat standards in 1993.

d.    A study by the National Center Catastrophic Sports Injury Research at the University of North Carolina at Chapel Hill showed that in the past 20 years, a catastrophic injury to a pitcher occurred only once for every million high school aged participants.

25.    Since 2003, nonwood bats used in high schools have been scientifically regulated so that the speed of batted balls off these bats does not exceed the ball exit speed for the best major league wood bats. In 2003, the NFHS adopted the BESR (Ball Exit Speed Ratio) rule, first established by the National Collegiate Athletic Association ("NCAA"). This rule was the outgrowth of the NCAA's investigation into regulation of metal bats and subsequent appointment of a "blue ribbon" Baseball Research Panel in 2000. The NCAA's Baseball

9

Research Panel was comprised of, among others, leading scientists, who set out to create a bat exit speed limit that was based on their scientific studies.

26. In 2003, the NFHS adopted this rule. The BESR requirement thus applies to high schools throughout New York state and the United States, including New York City. No nonwood bat may be used in high school play in New York City without a BESR sticker, indicating that the bat model has been tested and certified to not hit a ball faster than the best Major League wood bat.

## ADOPTION OF THE BAT ORDINANCE

27. On March 14, 2007, the New York City Council voted to adopt a bill entitled Int. 341-A, which was later adopted as the Bat Ordinance. The bill provided as follows:

Be it enacted by the Council as follows:

Section 1. Declaration of legislative findings and intent. The Council hereby finds that the use of non-wood bats poses an unacceptable risk of injury to children, particularly those who play competitive high school baseball.

§ 2. Title 10 of the administrative code of the city of New York is amended by adding a new section 10-165 to read as follows:

§ 10-165 Prohibition of use of non-wood bats. a. Definitions. When used herein, the following terms shall have the following meanings:

1. "Competitive baseball game" shall mean any organized baseball game at which a certified umpire officiates and which takes place in the city of New York.

2. "High school age children" shall mean persons older than thirteen years of age, but younger than eighteen years of age.

3. "School" shall mean any public or private school which includes any grade nine through twelve and which is located in the city of New York.

4. "Wood bat" shall mean any baseball bat constructed exclusively of wood or any wood laminated or wood composite bat, which is approved by major league baseball, pursuant to such organization's official rules, for major league or minor league baseball play; provided that such term shall not include any bat made in

whole or in part of metal, including, but not limited to, aluminum, magnesium, scandium, titanium or any other alloy compound.

b. Only wood bats shall be used in any competitive baseball game in which high school age children are participants and which involves the participation and/or sponsorship of a school.

§ 3. This local law shall take effect on September 1, 2007.

28.    The bill as voted on was an amended version of an earlier bill. The change included for the first time a provision that wood composite bats would be permitted if "approved by Major League Baseball, pursuant to such organization's official rules." Yet the City Council did not engage in any investigation of Major League Baseball's process for approving wood composite baseball bats.

29.    The amended bill was the subject of a single hearing, in which the opponents of the bill were limited to three minutes each. Immediately after the hearing, with no discussion, the City Council's Youth Services Committee voted to pass the bill. The bill was adopted by the City Council two days later.

30.    On April 4, 2007, Mayor Bloomberg vetoed the bill. In his veto message, he stated:

I disagree with [the New York City Council's] view that Introductory Number 341-A will advance a goal of ensuring that high school baseball games maintain their current competitive and safe levels. Baseball is one of the safest of all major sports played at the high school level. The risk of injury resulting from batted balls is extraordinarily small. In the City, there's no record of any serious injury resulting from a batted ball.

Moreover, there is insufficient evidence to support the contention that wood bats are safer than metal bats. In 2002, the Consumer Product Safety Commission Completed its study of the relative safety of metal and wood baseball bats and concluded that the available data were insufficient to indicate that non-wood bats posed an unreasonable risk of injury. The Commission found that there was no basis for concluding that injuries produced by balls batted with non-wood bats

11

were more frequent or severe than those involving wood bats. Similarly, organizations that oversee youth baseball, such as American Legion Baseball, found that there was insufficient evidence to conclude that metal bats pose a greater risk of injury.

In the absence of evidence establishing that a piece of sporting equipment creates a public safety concern, the issue of the most appropriate baseball equipment should be left to those charged with overseeing the sport. In the City, the Board of Education's School Support Services oversees the Public Schools Athletic League, which operates under the National Federation of State High School Associations. Federation rules provide that metal bats used in competitive baseball games must meet certain standards, including the "ball exit speed ratio" and length/weight differential standards utilized by the National Collegiate Athletic Association, which serve to limit the speed of a ball struck by a metal bat.

Apart from the issue of safety, the bill could very well have the unintended consequence of creating a barrier for some City high school baseball players vying for college baseball scholarships. Colleges and high schools throughout the country use metal bats. Because batting statistics for players using wood bats generally are lower than those using metal bats (which have a larger "sweet spot"), requiring City baseball athletes to use wood bats would place them at a competitive disadvantage.

In sum, Introductory Number 341-A's ban on metal baseball bats in City high school baseball games is unsupported by any empirical data, and risks placing city high school baseball players at a competitive disadvantage. The bill represents and inappropriate intrusion into an area that should be left to the considered oversight of baseball league officials, who are best suited to address such matters.

Introductory Number 341-A is hereby disapproved.

31.    On April 23, 2007, the New York City Council overrode Mayor Bloomberg's veto.

32.    The Bat Ordinance by its terms is due to take effect on September 1, 2007, in time for the fall high school baseball season in which many high school teams in New York City participate.

### THE BAT ORDINANCE IS ARBITRARY AND UNSUPPORTABLE

33.    The Bat Ordinance suffers from a host of fundamental deficiencies.  First, and most importantly, it is premised on the false and unsupported belief that metal and other nonwood bats are unsafe.  As set forth in the preamble to the ordinance: "the Council hereby finds that the use of non-wood bats poses an unacceptable risk of injury to children, particularly those who play competitive high school baseball."  But there is absolutely no evidence to support this position.  Many scientists have studied bat performance, including several who serve on the NCAA's blue ribbon Baseball Research Panel and who are responsible for establishing the regulations that already apply to metal bats used in high school and college play in America.  However, no scientist involved in bat research testified in support of the bill.

34.    In fact, Councilman Oddo, the primary proponent of the bill, and his staff, sought scientific support for their position, and were unable to obtain it.  They did receive at least one email response to their inquiries, indicating that the scientist they contacted opposed the bill, a fact which they did not disclose or submit into the legislative record.  This email was submitted into the legislative record only because it was discovered, and submitted, by Easton.

35.    The email, from Richard Greenwald, a respected scientist who has studied the performance of wood and metal bats, noted that "I am not aware of any published peer reviewed scientific data that supports the notion that there has been an increase in injuries related to being struck by a batted ball in baseball or softball at any level of play due to increased batted ball speed or bat performance.  Baseball and softball appear to have remained at the very low end of injury incidence lists."  The email further noted that "I would oppose any statement that linked . . . a limitation on using non-wood bats to injury, simply because there are no scientific data to

support this contention.  This is an important overlooked point – I urge Councilman Oddo to consider this as you move forward."

36.    While injuries have occurred from the use of metal bats, there is absolutely no evidence that those injuries would not also have occurred if those pitchers had been facing wood bats.  Many other organizations that have studied the safety issue have decided that no action should be taken against nonwood bats.  Those organizations include American Legion Baseball, Consumer Product Safety Commission, the NFHS, NCAA, American Baseball Coaches Association, Little League, Babe Ruth League. and Pony League.

37.    The Bat Ordinance suffers from a number of legal flaws.  Although it purports to be based on concerns over safety, it is not reasonably calculated to achieve that objective, as there is no fair, just or reasonable connection between the Bat Ordinance and the health and welfare of New York City high school baseball players.  Rather, the lack of any evidence that nonwood bats pose a safety risk shows that the Bat Ordinance is based on speculative and unfounded perceptions of health risks and lacks a reasonable or even rational relationship with its objective.

38.    Moreover, the Bat Ordinance completely prohibits all metal bats and all nonwood composite bats, as well as all bats that are even "in part" metal.  Despite the undisputed evidence in the legislative record that metal bats can be dampened to hit with lesser exit velocity, the New York City Council never attempted to regulate, let alone regulate by reasonable means, metal bats.  There were thus far less restrictive means available to the New York City Council to address the (unfounded) safety issue that purportedly justified the Bat Ordinance.  These other means were never considered by the New York City Council.

14

39.    By banning metal bats and non wood composite bats, but permitting wood composite bats, the Bat Ordinance discriminates against metal and nonwood composite bats without any rational basis. Since wood composite bats can hit a baseball with the same velocity as a metal bat or nonwood composite bat, there is no basis for such a distinction. Moreover, in some cases, wood composite bats are composed of almost entirely the same materials as nonwood composite bats, since some wood composite bats contain less than 5% actual wood veneer. There is no basis for distinguishing between the safety of wood composite bats and nonwood composite bats. Of course, there is no evidence that either nonwood composite bats or wood composite bats are unsafe.

40.    The Bat Ordinance only allows wood composite bats to be used by New York City high school players to the extent such bats are approved by Major League Baseball, according to the standards set forth by that organization. This is both irrational and improper. Pursuant to this provision, the New York City Council has delegated public responsibility for health and safety to a private body, Major League Baseball. It has irrationally done so, since Major League Baseball approves wood composite bats for Minor League professional play, not high school play. Moreover, in doing so, the goal of Major League Baseball is to simulate the offensive level of Major League "wood bat" games, not to increase safety. For example, the Major League Baseball protocol requires that wood composite bats break if hit on the handle. Yet a broken bat can increase danger for high school players as well as increase costs because of the need to frequently replace broken bats. These cost concerns may not be important to the Major Leagues, but they are critical to New York City high schools and their students and parents.

41.    This delegation to Major League Baseball also demonstrates the arbitrary and contradictory rationale for the Bat Ordinance. The tests under the Major League Baseball protocol include the very same exit speed tests applied by the NCAA and NFHS to regulate metal and nonwood composite bats at the high school and college levels. If these tests are adequate (as the scientific evidence supports), then there is no need for the Bat Ordinance, since they are already being applied. If they are not adequate, then the New York City Council has no rational basis for its adoption of the Major League Baseball protocol using these same tests to regulate wood composite bats.

## INJURY TO PLAINTIFFS

42.    If enforced in the City of New York, the Bat Ordinance will cause substantial and irreparable injury to each of the Plaintiffs. First, it will significantly harm the quality of baseball played in New York high schools, and make the game less enjoyable for the players. Because metal and nonwood composite bats are more "forgiving" than wood bats, it is not necessary for a hitter to make perfect contact with a pitch in order to avoid a sting to the hands. Moreover, metal and nonwood composite bats usually have a larger "sweet spot," which also enables hitters to make solid contact without having to perfectly center the bat on the ball. These characteristics of metal and nonwood composite bats enable less skilled players to have more success as hitters and create more offense, even though it does not result in greater ball exit speed or any safety risk. If metal and nonwood composite bats are banned, the game will be less fun for the large majority of high school players who are not outstanding athletes, and will make the game less competitive.

16

43.     Enforcement of the Bat Ordinance will also add substantial costs to New York City teams and players, since they will be forced to purchase wood bats, which need to be very frequently replaced and therefore, overall, are substantially more expensive than metal bats.

44.     New York and out-of-state high school players will be significantly and irreparably injured in their interstate competitive activity by the Bat Ordinance. The Bat Ordinance only applies to high school play in New York City. New York City high school baseball teams play many games every year against teams based outside of New York City and outside the State of New York. When these games are played outside of New York City, teams from New York City will either have to purchase a second set of bats (so they can play competitively with nonwood bats), or suffer the disadvantage of less effective wooden bats. Conversely, teams from outside New York City (and New York State) would have to purchase a set of wood bats in order to play games in New York City against New York City high school teams. This extra expense will likely cause many of these out-of-state teams to cancel their games against New York City teams in New York City parks. This will harm the exposure of New York City high school players to teams, coaches and scouts outside of New York City, and thereby harm the relationships that are formed through such events. This will also deter players, coaches and fans from out of state from attending high school baseball games in New York City.

45.     Amateur baseball leagues in New York City and their high school age players will be seriously and irreparably injured by the Bat Ordinance. While non-school sponsored amateur leagues, such as the Youth Service League, Babe Ruth and Pony Leagues, are not subject to the Bat Ordinance, many of these leagues involve New York City athletes of high school age. As such, New York City high school players active in these leagues will need to use metal or

nonwood composite bats in their other amateur games in order to be competitive. For this reason as well, they will therefore be forced to purchase two sets of bats or suffer a competitive disadvantage in amateur games.

46.    Many outstanding high school age baseball players will also be harmed in their efforts to attract college baseball scholarships. Since colleges all utilize metal and nonwood composite bats, it will be more difficult for college coaches to evaluate the performance of New York City athletes who use only wood bats in their high school games.

47.    USA Baseball will be injured by the Bat Ordinance because numerous New York City high school players participate in the leagues under USA Baseball's umbrella, including American Legion, Pony League, and Babe Ruth League baseball. These players and their parents will either be forced to purchase two sets of bats (wood or wood composite bats for New York City high school play, and metal or nonwood composite bats for play in USA Baseball leagues), or suffer a competitive disadvantage in metal and nonwood composite bat play. Both these alternatives are unattractive because of cost and because of the players' preference for metal and nonwood composite bats. Forcing either of these alternatives on parents and players will discourage them from participation in the USA Baseball Leagues, including American Legion, Pony League and Babe Ruth League baseball.   Declining participation rates harm USA Baseball both in terms of the number of participants in the leagues that operate under its umbrella, and in the number of participants from which its Youth National Team and Junior National Team may draw.

48.    USA Baseball's Youth National Team and Junior National Team will be further injured by the Bat Ordinance because the teams seek players from the entire country, including

New York City, and the teams will have a difficult time comparing the performance of players using wood bats with players using metal bats.

49.     These concerns are especially important because of the diminishing youth participation in baseball. Between 1990 and 2005 the total number of youths aged 6-17 who played baseball at least once per year fell by over 29%, while the total population in this age group increased by 19%. These problems in competitiveness and greater expense created by enforcement of the Bat Ordinance will likely reduce youth participation in baseball in New York City.

50.     The Bat Ordinance was opposed by both the Public School Athletic League and the Catholic High School Athletic Association. These two associations, representing all public school and Catholic school baseball teams in New York City, account for the vast majority of high school teams and players who would be affected by the bill.

51.     Plaintiffs who are parents of high school players in New York City will be injured on behalf of their sons for all the foregoing reasons, and, in particular, because the Bat Ordinance will increase their costs to purchase bats for their children.

52.     Plaintiffs who are coaches will be injured by the Bat Ordinance for all the foregoing reasons, and because the Bat Ordinance will reduce the quality of baseball games in New York and therefore, harm New York City coaches and administrators who are directly involved in the day to day conduct of their high school baseball teams.

53.     Plaintiff Zitter will be injured by the harm to the Youth Service League for the reasons described in paragraph 45.

54.     Enforcement of the Bat Ordinance will significantly injure the bat manufacturer Plaintiffs in several ways.  First, they will lose significant sales in the city of New York.  Second, enforcement of the Bat Ordinance will significantly harm the reputation and goodwill of the bat manufacturer Plaintiffs and of their metal and nonwood composite bat products, by suggesting incorrectly to the public that these bats are unsafe.

55.     Unless the Bat Ordinance is enjoined before it becomes effective in September (at the time of commencement of fall high school baseball), the Plaintiffs will therefore suffer these serious and irreparable injuries.

## COUNT I - VIOLATION OF AMENDMENT XIV OF THE UNITED STATES CONSTITUTION  - DUE PROCESS

56.     Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

57.     The Bat Ordinance bears no rational relationship to any legitimate governmental purpose, and is thus arbitrary and invalid under the Due Process clause of the United States Constitution.  For these reasons, the Bat Ordinance violates the Plaintiffs' rights under the Federal Civil Rights Act, 42 U.S.C. § 1983, and this entitles Plaintiffs to attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT II – VIOLATION OF AMENDMENT XIV OF THE UNITED STATES CONSTITUTION – EQUAL PROTECTION

58.     Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

59.     The Bat Ordinance permits the use of wood bats in New York City high school games, but prohibits the use of aluminum or non-wood composite bats, despite the absence of any rational basis for the distinction, in violation of the Equal Protection Clause of the United

States Constitution. This discrimination violates Plaintiffs' rights under the Federal Civil Rights Act, 42 U.S.C. § 1983, and entitles Plaintiffs to attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT III - VIOLATION OF AMENDMENT XIV OF THE UNITED STATES CONSTITUTION – EQUAL PROTECTION

60.      Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

61.      The Bat Ordinance allows the use of wood composite bats in New York City high school games only to the extent such bats are "approved by major league baseball, pursuant to such organization's official rules."

62.      In contrast, the Bat Ordinance prohibits the use of metal or nonwood composite bats, regardless of whether such bats perform at or below the level of wood composite or wood bats.

63.      The Bat Ordinance also permits the use of wood composite bats, some of which are comprised of over 95% composite materials and less than 5% wood, while prohibiting bats made of 100% composite materials, despite the fact that adding less than 5% wood veneer to a bat (as is contained in wood composite bats) has no impact on batted ball exit speed.

64.      There is therefore no rational basis on which to conclude that metal bats or nonwood composite bats present a higher risk of injury to high school baseball players than do wood composite or wood bats.

65.      The Bat Ordinance discriminates between (a) metal and nonwood composite bats, and (b) wood composite bats, with no rational basis in violation of the Equal Protection Clause of the United States Constitution. This discrimination violates Plaintiffs' rights under the Federal Civil Rights Act, 42 U.S.C. § 1983, and entitles Plaintiffs to attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT IV – UNLAWFUL DELEGATION OF AUTHORITY TO PRIVATE PARTIES IN VIOLATION OF AMENDMENT XIV OF THE UNITED STATES CONSTITUTION - DUE PROCESS

66.    Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

67.    The Bat Ordinance violates the due process clause by impermissibly delegating legislative authority to a private party, in violation of Amendment XIV of the United States Constitution. Thus, the Bat Ordinance violates the Plaintiffs' rights under the Federal Civil Rights Act, 42 U.S.C. § 1983, and this entitles Plaintiffs to attorneys' fees pursuant to 42 U.S.C. § 1988.

## COUNT V – UNLAWFUL BURDEN ON INTERSTATE COMMERCE IN VIOLATION OF ARTICLE 1, § 8, CL. 3 OF THE UNITED STATES CONSTITUTION

68.    Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

69.    Many high school baseball games involve competition between New York City schools and out-of-state schools. These events necessarily generate the transportation of persons across state lines, which has long been recognized as a form of commerce.

70.    The Bat Ordinance burdens interstate commerce by subjecting high school baseball teams to inconsistent regulations, and penalizing teams who wish to play games by traveling across state lines, including both New York City teams wishing to play outside of New York, and out-of-state teams wishing to play in New York City. The Bat Ordinance thus tends to isolate New York City players and teams.

71.    The Bat Ordinance burdens interstate commerce without any benefit to a legitimate local interest. Alternatively, the burden to interstate commerce substantially outweighs any local benefit.

22

72.    For these reasons, the Bat Ordinance violates the Commerce Clause of the United States Constitution, Article 1, Section 8, Clause 3, and is therefore an unlawful and invalid exercise of legislative power.

## COUNT VI - UNLAWFUL EXERCISE OF LEGISLATIVE POWER

73.    Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

74.    As set forth above, there is no evidence that metal or nonwood composite bats are less safe than wood or wood composite bats for use in high school baseball play.

75.    Thus, the Bat Ordinance does not bear a substantial, reasonable or rational relationship to the health, comfort or safety of the high school baseball players in New York City.

76.    For these reasons, the Bat Ordinance exceeds the specific powers granted to the City of New York under NY. GEN. CITY Ch. 21 Art. 2-A, § 20(13), and is therefore an unlawful and invalid exercise of legislative power.

## COUNT VII - UNLAWFUL EXERCISE OF LEGISLATIVE POWER

77.    Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

78.    The Bat Ordinance does not attempt to reasonably regulate the use of metal or nonwood composite bats.  Rather, the Bat Ordinance completely prohibits the use of metal and nonwood composite bats in New York City high school baseball games, though regulation would be extremely feasible if it was justified.  Metal and nonwood composite bats are already regulated by the NFHS.

23

79.     Because the Bat Ordinance completely prohibits, rather than regulates, a normal commercial activity, the Bat Ordinance exceeds the specific powers set forth in NY. GEN. CITY Ch. 21 Art. 2-A, § 20(13), and is therefore an unlawful and invalid exercise of legislative power.

## COUNT VIII - UNLAWFUL DELEGATION OF LEGISLATIVE POWER

80.     Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

81.     As set forth above, the Bat Ordinance allows the use of nonwood composite bats in New York City high school games only to the extent such bats are "approved by major league baseball, pursuant to such organization's official rules."

82.     The stated purpose of the Bat Ordinance is to protect the health and welfare of New York City high school baseball players.

83.     Thus, in enacting the Bat Ordinance, the New York City Council violated Article III, Section 1 of the Constitution of New York by delegating the responsibility for the protection of the health and welfare of baseball players in the City of New York to a private party. The Bat Ordinance is thus unlawful and invalid.

## COUNT IX - VIOLATION OF ARTICLE I, SECTION 6 OF THE CONSTITUTION OF THE STATE OF NEW YORK

84.     Plaintiffs reallege and reincorporate paragraphs 1 - 55 above.

85.     The Bat Ordinance finds that metal and nonwood composite bats pose "an unacceptable risk of injury to children, particularly those who play competitive high school baseball."

86.     There is no substantial evidence in the legislative record or otherwise that metal and nonwood composite bats are in any way unsafe for competitive high school baseball.

87.     The Bat Ordinance does not bear a fair, just or reasonable relationship to a proper governmental purpose and is totally arbitrary.  For these reasons, the Bat Ordinance violates Article I, Section 6 of the Constitution of the State of New York.

## COUNT X - VIOLATION OF ARTICLE I, SECTION 11 OF THE CONSTITUTION OF THE STATE OF NEW YORK

88.     Plaintiffs reallege and reincorporate paragraphs 1 - 65 above.

89.     The Bat Ordinance also discriminates between (a) metal and nonwood composite bats, and (b) wood and wood composite bats with no rational basis, in violation of Article 1 § 11 of the Constitution of the State of New York.

WHEREFORE, Plaintiffs request this Court to preliminarily and permanently enjoin enforcement of the Bat Ordinance, declare the Bat Ordinance unconstitutional and unlawful, grant Plaintiffs their attorneys' fees and costs, and provide such other relief as is considered just.

Dated: New York, New York
      May 7, 2007

                                        DEWEY BALLANTINE LLP


                                        By: _____
                                            John F. Collins (JC-9324)
                                            A Member of the Firm

                                        1301 Avenue of the Americas
                                        New York, New York 10019
                                        (212) 259-8000

                                        Attorneys for Plaintiffs

Of Counsel:

David A. Ettinger
Jeffrey H. Kuras
Honigman Miller Schwartz and Cohn LLP
660 Woodward Avenue
2290 First National Building
Detroit, Michigan 48226-3506
(313) 465-7368