Index No. No. 07 CV 3605 (JGK) (DFE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USA BASEBALL, THE NATIONAL HIGH
SCHOOL BASEBALL COACHES ASSOCIATION,
DR. PETER BERG, JUAN HERNANDEZ, DENNIS
CANALE, MEL ZITTER, MICHAEL CRUZ, TIT0
NAVARRO, JOHN TORRES, EASTON SPORTS,
INC., WILSON SPORTING GOODS CO.,
RAWLINGS SPORTING GOODS COMPANY, and
HILLERICH & BRADSBY CO.,

Plaintiffs,

-against-

THE CITY OF NEW YORK,

Defendant.

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND A PRELIMINARY INJUNCTION

*MICHAEL A. CARDOZO*
*Corporation Counsel of the City of New York*

*Attorney for Defendant*
*100 Church Street, 5-189*
*New York, N.Y. 10007*

*Of Counsel: Jerald Horowitz*
*Tel: (212) 442-0589*
*LM No.2007-015516*

GABRIEL TAUSSIG,
JERALD HOROWITZ,
Of Counsel

LAUREN G. AXELROD,
ALVIN L. BRAGG, JR.,
LAURA J. POPA,
On the Memorandum.

June 19, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT

      POINT I

             PLAINTIFFS' EQUAL PROTECTION AND DUE
             PROCESS CLAIMS FAIL AS A MATTER OF
             LAW. THE LEGISLATIVE CLASSIFICATION
             IS RATIONALLY RELATED TO A
             LEGITIMATE GOVERNMENT INTEREST. .......................................... 3

      POINT II

             LOCAL LAW 20 OF 2007 DOES NOT VIOLATE
             THE COMMERCE CLAUSE BECAUSE IT DOES
             NOT BURDEN INTERSTATE COMMERCE IN
             ANY WAY. IN ANY EVENT, ANY
             INCIDENTAL BURDEN ON INTERSTATE
             COMMERCE IS OUTWEIGHED BY THE
             LOCAL BENEFIT IT ACHIEVES. .......................................................... 9

      POINT III

             LOCAL LAW 20 DOES NOT UNLAWFULLY
             DELEGATE LEGISLATIVE AUTHORITY TO
             MAJOR LEAGUE BASEBALL. ............................................................. 12

      POINT IV

             LOCAL LAW 20 WAS PROPERLY ENACTED
             PURSUANT TO THE COUNCIL'S BROAD
             HOME RULE POWERS. LOCAL LAW 20 IS A
             REGULATION, NOT A PROHIBITION; BOTH
             OF WHICH ARE AUTHORIZED. .......................................................... 17

             A. Local Law 20 Constitutes a Regulation, Not a
                 Prohibition, and the Council's Home Rule
                 Authority Includes the Power to Prohibit. ........................................ 17

**Page**

    B.   The Legislative Intent of the Council Warrants
in Favor of Severability And Strongly Against
Complete Invalidation of Local Law 20 ...........................................19

POINT V

PRELIMINARY INJUNCTIVE RELIEF SHOULD
BE DENIED TO PLAINTIFFS. ................................................................21

CONCLUSION ...............................................................................................................25

**Pages**

## TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                    **Pages**

8200 Realty Corp. v. Lindsay,
    27 N.Y.2d 124 (1970) ...........................................................................14

Association of Surrogates & Supreme Court Reporters v. State,
    79 N.Y.2d 39 (1992) ...........................................................................20

Atlantic-Inland v. Union,
    126 Misc. 2d 509 (N.Y. Sup. Ct, Broome Co. 1984).........................................14 n9

Beatie v. City of New York,
    123 F.3d 707 (2d Cir. 1997)........................................................3, 4, 18

Biener v. Calio,
    361 F.3d 206 (3d Cir.),
    cert. den'd, 543 U.S. 817 (2004)..................................................................15

Brett v. Hillerich & Bradsby Co.,
    No. CIV-99-981-C (W.D. Okla. 2002) .......................................................4 n4

Bryant Westchester Realty Corp. v. Board of Health,
    91 Misc. 2d 56 (Sup. Ct. NY Co. 1977),
    aff'd, 61 A.D.2d 889 (1st Dep't 1978).........................................................4-5

Citizens for a Safer Community v. City of Rochester,
    164 Misc. 2d 822 (Sup. Ct. Monroe Co. 1994)...........................................13

City of Amsterdam v. Helsby,
    37 N.Y.2d 19 (1975) .......................................................................13-14

City of Cleburne v. Cleburne Living Center,
    473 U.S. 432 (1985)...........................................................................6, 7

City of New York v. Job-Lot Pushcart,
    88 N.Y.2d 163 (1996) ...................................................................18-19

Matter of the City of Utica v. Water Pollution Control Board,
    5 N.Y.2d 164 (1959) ...........................................................................13

Connor v. Board of Education,
    645 F.2d 578 (7th Cir. 1982) ...............................................................23

**Page**

Dittmer v. County of Suffolk,
59 Fed. Appx. 375, 2003 U.S. App. LEXIS 3757 (2d. Cir. 2003)..............................................8

Dorsey v. Stuyvesant Town Corp.,
299 N.Y. 512,
cert. denied, 339 U.S. 981 (1950) .........................................................................................4 n3

Esler v. Walters,
56 N.Y.2d 306 (1982) .........................................................................................................4 n3

FCC v. Beach Communications, Inc.,
508 U.S. 307 (1993).....................................................................................................3, 4, 5, 8

Fink v. Cole,
302 N.Y. 216 (1951) ...............................................................................................................14

Flood v. Kuhn,
309 F. Supp. 793 (S.D.N.Y. 1970) .........................................................................................22

General Electric. Co. v. New York State Department of Labor,
936 F.2d 1448 (2d Cir. 1991)..................................................................................................15

Golden v. Clark,
76 N.Y.2d 618 (1990) ...........................................................................................................4 n3

Good Humor Corp. v. City of New York,
264 A.D. 620 (2d Dep't 1942).................................................................................................19

Grand River Enterprise Six Nations, Ltd. v. Pryor,
481 F.3d 60 (2d Cir. 2007).......................................................................................................22

Guy v. York State Pub. High School Athletic Ass'n,
9 Misc. 3d 1116A, 2005 NY Slip Op 51605U, (Sup. Ct. Onondaga Co. 2005)......................10

Heller v. Doe,
509 U.S. 312 (1993)....................................................................................................................3

Jankowski-Burczyk v. INS,
291 F.3d 172 (2d Cir. 2002)...................................................................................................7, 8

Kampmeier v. Nyquist,
553 F.2d 296 (2d Cir. 1977)....................................................................................................23

**Page**

Kaneohe Bay Cruises, Inc. v. Hirata,
    75 Haw. 250 (1993) ...................................................................................................7

Koston v. Town of Newburgh,
    45 Misc. 2d 382 (Sup. Ct. Orange Co. 1965) ......................................................19

L&L Started Pullets Inc. v. Gourdine,
    592 F. Supp. 367 (S.D.N.Y. 1984),
    aff'd, 762 F.2d 1 (2d Cir. 1985)............................................................................11

Leavitt v. Jane L.,
    518 U.S. 137 (1996)..............................................................................................20

Matter of Levine v. Whalen,
    39 N.Y.2d 510 (1976) ...........................................................................................13

Lewis v. BT Investment Managers, Inc.,
    477 U.S. 27 (1980)...........................................................................................9, 10

Maine v. Taylor,
    477 U.S. 131 (1986)..............................................................................................11

Marcy v. Federal Aviation Admin.,
    1991 U.S. App. LEXIS 13904 (10th Cir. 1991) ..................................................14

McCormick v. Mamaroneck,
    370 F.3d 275 (2d Cir. 2004)............................................................................23 n13

McDonald v. Board of Election Comm'rs,
    394 U.S. 802 (1969)................................................................................................7

Methodist Hospital of Brooklyn v. New York State Labor Relations Board,
    382 F. Supp. 459 (S.D.N.Y. 1974) .......................................................................22

Minnesota v. Cloverleaf Creamery, Inc.,
    449 U.S. 456 (1981).........................................................................................11, 12

NAACP v. Town of East Haven,
    70 F.3d 219 (2d Cir. 1995).....................................................................................21

New York City C.L.A.S.H. v. City of New York,
    315 F. Supp. 2d 461 (S.D.N.Y. 2004)...................................................................18

**Page**

New York City Friends of Ferrets v. City of New York,
 876 F. Supp. 529 (S.D.N.Y. 1995) ...................................................................19

New York State Association of Cemeteries, Inc. v. Fishman,
 116 Fed. Appx. 310, 2004 U.S. App. LEXIS 24688 (2d Cir. 2004)..........................................8

North American Safety Valve Industries, Inc. v. Wolgast,
 672 F. Supp. 488 (D. Kan. 1987) ...................................................................15

Peace v. McAdoo,
 110 A.D. 13 (2d Dep't 1905) ...................................................................19

People v. Knapp,
 230 N.Y. 48 (1920) ...................................................................20, 21

People v. Ortiz,
 125 Misc. 2d 318 (Crim. Ct. Bronx Co. 1984) ...................................................................18

Pike v. Bruce Church, Inc.,
 397 U.S. 137 (1970)...................................................................11

Plaza Health Laboratories, Inc. v. Perales,
 878 F.2d 577 (2d Cir. 1989)...................................................................21

Richmond Boro Gun Club, Inc. v. City of New York,
 896 F. Supp. 2d 276 (E.D.N.Y. 1995),
 aff'd, 97 F.3d 681 (2nd Cir. 1996)...................................................................18

Ricketts v. City of New York,
 181 Misc. 2d 838 (Sup. Ct. N.Y. Co. 1999) ...................................................................20, 21

Roberts v. Colorado State Board Of Agriculture,
 998 F.2d 824 (10th Cir. 1993) ...................................................................23 n13

Royal Insurance Co. of America v. Ru-Val Electric Corp.,
 918 F. Supp. 647 (E.D.N.Y. 1996) ...................................................................14, 16

S.E. Nichols Herkimer Corp. v. Village of Herkimer,
 34 A.D.2d 371 (4th Dep't 1970) ...................................................................19

Sanchez v. Hillerich & Bradsby Co.,
 104 Cal. App. 4th 703 (2002) ...................................................................4 n4

Syracuse v. Penny,
 59 Misc. 2d 818 (Sup. Ct. Onondaga Co. 1969)...................................................................15

**Page**

Towne Construction Co. v. Occupational Safety and Health Review Commission,
    847 F.2d 1187 (6th Cir. 1988) .................................................................16

Under 21 v. City of New York,
    65 N.Y.2d 344 (1985) ...............................................................................4

United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority,
    438 F.3d 150 (2d Cir. 2006),
    aff'd, 127 S. Ct. 1786 (2007) ...........................................................11, 12

United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Management Authority,
    127 S. Ct. 1786 (2007) ...................................................................9, 10, 12

United States v. Lopez,
    514 U.S. 549 (1995) ................................................................................10

Warner-Lambert Co. v. Northside Development Corp.,
    86 F.3d 3 (2d Cir. 1996).........................................................................24

Williamson v. Lee Optical of Oklahoma, Inc.,
    348 U.S. 483 (1955)..................................................................................7

**Statutes and Rules**

Baltimore Admin. Code § 18-102...................................................................10

Fed. R. Civ. P. Rule 56(c)................................................................................1

N.Y.C. Admin. Code § 1-105 .......................................................................20

N.Y.C. Admin. Code § 10-138 .....................................................................10

N.Y. Const. art. IX, § 2(c)............................................................................17

N.Y. General City Law art. 2-A, § 20(13) ...................................................17

N.Y. Gen. Village Law § 86 .........................................................................19

N.Y. Mun. Home Rule Law § 10(1)(a)(12) .................................................17

N.Y. Mun. Home Rule Law §§ 50(1), 51 ...................................................17

Local Law 20 of 2007 ............................................................................*passim*

**Page**

**Other Authorities**

Wilmot, <u>Baseball Bats in the High Tech Era: A Products Liability Look at New
Technology, Aluminum Bats, and Manufacturer Liability</u>, 16 Marq. Sports L. Rev.
353 (2006)...........................................................................................................14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

USA BASEBALL, THE NATIONAL HIGH
SCHOOL BASEBALL COACHES ASSOCIATION,
DR. PETER BERG, JUAN HERNANDEZ, DENNIS
CANALE, MEL ZITTER, MICHAEL CRUZ, TITO
NAVARRO, JOHN TORRES, EASTON SPORTS,       No. 07 CV 3605 (JGK)(DFE)
INC., WILSON SPORTING GOODS CO.,
RAWLINGS SPORTING GOODS COMPANY, and
HILLERICH & BRADSBY CO.,

                                    Plaintiffs,


                  -against-


THE CITY OF NEW YORK,

                                    Defendant.

------------------------------------------------------------------------ X


### DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

Defendant, the City of New York ("City"), respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on all of plaintiffs' claims, and in opposition to plaintiffs' motion for a preliminary injunction and summary judgment.

Local Law 20 of 2007 ("Local Law 20") was enacted on April 23, 2007. Local Law 20 regulates the types of baseball bats that may be used by high school age children in organized baseball games involving the participation and/or sponsorship of a school in the City of New York. Specifically, Local Law 20 permits the use of only (i) wood bats or (ii) wood laminated or wood composite bats that are approved by Major League Baseball ("MLB"). The

use of metal or metal composite ("non-wood") bats in competitive high school baseball games was deemed by the City Council to pose an unacceptable risk of injury to the children participating in those games and create a deleterious effect on player development and the traditions and integrity of the game of baseball.

Plaintiffs, an amalgam of bat manufacturers and their distributors, a baseball organization, high school baseball coaches, and high school players and their parents, seek to strike down Local Law 20 on a number of constitutional and state law grounds, principally on the premise that the exclusion of non-wood bats will not make the game any safer, and therefore the statute bears no rational relationship to any legitimate purpose.

As discussed more fully below, and in the accompanying declaration of Laura Popa, dated June 18, 2007 ("Popa Decl."), and the declaration of Jerald Horowitz, dated June 18, 2007 ("Horowitz Decl."), and the exhibits attached thereto,[1] plaintiffs' "kitchen sink" approach to litigation permeating the complaint's ten (10) claims and the twenty-two (22) declarations submitted as exhibits to their motion ("Pl. Ex."), contain nothing of legal substance. As there are no material issues of fact and the undisputed facts establish that the City is entitled to judgment as a matter of law, the City now moves for summary judgment dismissing the complaint in its entirety. Summary judgment should be granted to the City because Local Law 20 is constitutional in all respects.

---

[1] All exhibits to the Horowitz Decl. are referred to in this document as "Ex. D__."

-2-

**ARGUMENT**

**POINT I**

**PLAINTIFFS' EQUAL PROTECTION AND DUE PROCESS CLAIMS FAIL AS A MATTER OF LAW. THE LEGISLATIVE CLASSIFICATION IS RATIONALLY RELATED TO A LEGITIMATE GOVERNMENT INTEREST.**

Plaintiffs' equal protection and due process claims (Claims 1, 2, 3, 9 and 10) fail on the merits. Plaintiffs argue (Pl. Mem. at 18-21) that Local Law 20 bears no rational relationship to any legitimate governmental purpose. "Legislative acts that do not interfere with fundamental rights or single out suspect classifications carry with them a strong presumption of constitutionality." Beatie v. City of New York, 123 F.3d 707, 711 (2d Cir. 1997) ("Beatie") (summary judgment granted to City on challenge by cigar smoker to the City's law banning smoking in public areas on equal protection and due process grounds). The United States Supreme Court has held that rational basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." Heller v. Doe, 509 U.S. 312, 319 (1993) (quoting FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993)). Rather, a court need only find some "reasonably conceivable state of facts that could provide a rational basis for the legislative action." Id. at 320; Beatie, 123 F.3d at 711. Thus, if a court can find any "plausible reasons" for the legislation, the court's review is at an end. FCC, 508 U.S. at 313-314; Beatie, 123 F.3d at 712. Here, the Council enacted Local Law 20 -- and chose wood and wood composite ("wood") bats over non-wood bats in high school baseball games -- due to concerns about safety, the traditions and integrity of the game of baseball, and player development.[2]

---

[2] The legislative record is clear that the use of wood bats is tied to a player's growth and development, and many players who use non-wood bats practice with wood bats to improve their skills. See Popa Decl.,

These concerns certainly provide "plausible reasons" for the enactment of Local Law 20.[3] FCC, 508 U.S. at 313-314; Beatie, 123 F.3d at 712.

Plaintiffs' argument (Pl. Mem. at 13) that Local Law 20 is not supported by any scientific evidence founders on the notion that any evidence is required. In fact, "a legislative choice is not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data." FCC, 508 U.S. at 315; see Beatie at 713. In any event, plaintiffs admit that non-wood bats outperform wood bats.[4] Non-wood bats produce more and better hits than wood bats by being lighter, easier and faster ("quicker") to swing and thereby "propel balls forward with rocket force." See Exs. D3-D5; Popa Decl., ¶ 19-25. Further, it is undisputed that non-wood bats have a "trampoline effect." See Exs. D3-D5. Contrary to what occurs with a wood bat, the barrel of a non-wood bat compresses like a spring when it hits a ball. See Popa Decl., ¶ 24. Common sense provides ample justification for the Council's attempt to reduce the risk of injury to high school baseball players by reducing the number of hard hit balls

---

¶¶ 28-31. Major League Baseball has a strict wood-only policy to preserve the traditions and integrity of the game of baseball. See Popa Decl., ¶ 35. The Popa Decl. provides an overview of the legislative record for Local Law 20 and other public documents and testimony that support the enactment of Local Law 20.

[3] The New York State Constitution also includes an equal protection clause which is "no broader in coverage than the Federal provision" set forth in the United States Constitution. Under 21 v. City of New York, 65 N.Y.2d 344, 360 n.6 (1985) (citing e.g., Esler v. Walters, 56 N.Y.2d 306, 313-314 (1982)). Indeed, the State's clause "was designed simply to '[embody] in our Constitution the provisions of the Federal Constitution which are already binding upon our State and its agencies.'" Id. (quoting Dorsey v. Stuyvesant Town Corp., 299 N.Y. 512, 530-31, cert. denied, 339 U.S. 981 (1950)). Accordingly, whether equal protection and due process claims are brought under the Federal or the State Constitution, the same legal standard applies. See Golden v. Clark, 76 N.Y.2d 618, 624 (1990).

[4] Two courts have held that product liability claims relating to use of bats in compliance with prior NCAA standards presented issues of fact for a jury trial. See Sanchez v. Hillerich & Bradsby Co., 104 Cal. App. 4th 703 (2002); Brett v. Hillerich & Bradsby Co., No. CIV-99-981-C (W.D. Okla. 2002). If the safety issues relating to those high-powered non-wood bats were sufficient to raise trial issues in that context, they are more than sufficient to provide a rational basis here for the enactment of Local Law 20.

at players in the field.   See Bryant Westchester Realty Corp. v. Board of Health, 91 Misc. 2d 56,

58 (Sup. Ct. NY Co. 1977), aff'd, 61 A.D.2d 889 (1st Dep't 1978) ("[E]ven without the need for

a study, it must be concluded that adequately installed window guards will tend to prevent

children from falling out of windows.").

Plaintiffs argue (Pl. Mem. at 10) that the Council should have regulated based on

exit speed, not materials used to construct the baseball bat.   Again, it is not the Court's role to

second guess the approach taken by the legislature.   See  FCC, 508 U.S. at 313.   Contrary to

plaintiffs' assertion, exit speed alone is not an adequate means to regulate baseball bats.   Again,

it is undisputed that non-wood bats have multiple locations on the bat surface, known as the

"sweet spot," where a baseball can be hit harder more often.   See Pl. Mem. at 4 n.1; Pl. Ex. 9,

Berg Decl., ¶ 4; Pl. Ex. 12, Canale Decl., ¶¶ 7, 8; Pl. Ex. 8, Cruz Decl., ¶ 3; Pl. Ex. 19,

Hernandez Decl. ¶ 4; Pl. Ex. 10, Navarro Decl., ¶ 3; Pl. Ex. 7, Torres Decl., ¶ 4; Exs. D3-D5; Ex.

D13 at 6.   Wood bats, however, have a much smaller "sweet spot."   See Pl. Ex. 17, Zitter Decl.,

¶ 12; Popa Decl., ¶ 25.   Therefore, a regulation based solely on exit speed will not account for

the increased risk posed by the multiple sweet spots available on non-wood bats.

In addition, the Council reviewed documents indicating that the current standards

used by the NCAA and NFHS cannot be relied upon to determine which bats will perform like

wood bats in the field.   See Popa Decl., ¶¶ 19-25.   Specifically, the legislative record shows that

the NCAA test does not adequately account for the fact that the weight is distributed closer to the

handle in non-wood bats, resulting in a lower MOI that makes the bats easier and quicker to

swing.[5]  See Popa Decl., ¶ 21-23.  This accelerated swing speed results in greater ball exit speed and greater performance on the field.  See Popa Decl., ¶¶ 19-23.

These differences are also supported by testimony that injured players did not have enough time to react to speeding balls hit from non-wood bats and that such bats increase the risk of injury to children.  See Popa Decl., ¶¶ 26-27; Ex. D15 at 126-137 (testimony of father of injured child); Ex. D16 at 109-111 ("Brandon didn't have a chance.") (Deb Patch, whose son Brandon was killed), 179-181 (father of injured child); Ex. D17 at 4-5 (former Mets pitcher John Franco, on pitching at high school practices), 20-25 (father of injured child); Ex. D18 (high school coach).[6]  Given this testimony, Plaintiffs' claim that an "attentive, in position college level pitcher using proper technique" will be able to "respond" quickly enough to a batted ball, is unpersuasive.  See Pl. Ex. 4, Breen Decl., ¶ 15.  Even if "respond" means more than getting a glove up to barely deflect a batted ball and this assessment is valid, there is no reason to believe that high school students have the experience and skill of "an attentive, in position college pitcher."  See Ex. D6 (NCAA memorandum questioning whether current standard provides sufficient response time).  Accordingly, the City Council had ample reason to make its classification in favor of wood over non-wood bats.

Plaintiffs' reference (Pl. Mem. at 18) to the City of Cleburne's attempt to restrict the location of group homes for the mentally retarded, as presented in City of Cleburne v.

---

[5] Contrary to plaintiffs' assertions, MLB performs significant additional tests, which are conducted in a different manner than tests used by the NCAA; one of these key, additional tests ensures that the MOI of a MLB-approved wood composite bat is similar to that of a wood bat.  See Ex. D21; Popa Decl., ¶¶ 35-36.

[6] The methods for gathering baseball injury data are statistically limited.  See Ex. D26 (NCAA data relies on self-reporting); Ex. D27 (National Electronic Injury Surveillance System data collects information from only 100 hospitals); Ex. D28 (National Center for Catastrophic Sports Injury Research data only includes fatalities and the most severe injuries); Pl. Ex. 1, Kirby Decl., ¶3 (Little League data is based on secondary medical insurance claims).

Cleburne Living Center, 473 U.S. 432, 439 (1985), is a far cry from the regulation of metal bats

here. The heightened "rationality-plus" standard applied in City of Cleburne is not applicable

here. In distinguishing the decision in City of Cleburne, the Supreme Court of Hawaii reasoned

that there is an essential difference between the mentally retarded, as a class, and "the more

mundane sorts of classification created by routine regulatory legislation, such as that in the

present case." Kaneohe Bay Cruises, Inc. v. Hirata, 75 Haw. 250, 263-264 (1993). Having

made the distinction, the Supreme Court of Hawaii upheld a ban on commercial operation of

water thrill craft on weekends and holidays even though there was no apparent difference

between commercial thrill craft operations and recreational thrill craft use. The court reasoned

that the legislative choice was not irrational because limiting one type of thrill craft use would

relieve congestion in the waters. Id. Similarly, limiting certain types of baseball bats that

produce more hard hit balls will reduce the risk of injury on the field.

        Plaintiffs also argue (Pl. Mem. at 19) that it was irrational for the Council to

distinguish between wood composite and non-wood bats. The Council had to draw the line

somewhere as to what type of baseball bats can be used in competitive high school baseball

games. The notion that the Council did not go far enough is of no constitutional import. "A

legislature traditionally has been allowed to take reform 'one step at a time, addressing itself to

the phase of the problem which seems most acute to the legislative mind,' . . . and a legislature

need not run the risk of losing an entire remedial scheme simply because it failed, through

inadvertence or otherwise, to cover every evil that might conceivably have been attacked."

Jankowski-Burczyk v. INS, 291 F.3d 172 (2d Cir. 2002) (quoting McDonald v. Board of

Election Comm'rs, 394 U.S. 802, 809 (1969) and Williamson v. Lee Optical of Oklahoma, Inc.,

348 U.S. 483, 489 (1955)). "This necessity renders the precise coordinates of the resulting

legislative judgment virtually unreviewable, since the legislature must be allowed leeway to approach a perceived problem incrementally." FCC, 508 U.S. at 316 (citation omitted).  In any event, the legislative record, as well as plaintiffs' admissions, show that wood composite bats are considered to be like wood bats, and are viewed as durable and cost-effective for leagues with wood-only policies. See Pl. Ex. 17, Zitter Decl., ¶ 12; Popa Decl., ¶¶ 33-34; Ex. D24 (statement that switch in North Dakota from wood only policy to wood composite bats "give[s] us the durability greater than aluminum at 1/3 of the cost," and NCAA Division II conference regulations allowing for the use of only wood and wood composite bats); see also Ex. D16 at 111-116 (testimony of former professional baseball player that composite bats perform like wood bats); Ex. D25 (laboratory and field tests show that wood composite bats perform similarly to wood bats while non-wood bats significantly outperform both wood and wood composite bats).

Accordingly, Local Law 20 is rationally related to a legitimate legislative action, and is therefore constitutional.  See New York State Ass'n of Cemeteries, Inc. v. Fishman, 116 Fed. Appx. 310, 2004 U.S. App. LEXIS 24688 (2d Cir. 2004) (upholding state law that prohibited certain business combinations between funeral entities and cemeteries); Dittmer v. County of Suffolk, 59 Fed. Appx. 375, 2003 U.S. App. LEXIS 3757 (2d. Cir. 2003) (upholding Long Island Pine Barrens Maritime Reserve Act against landowners' challenge); Jankowski-Burczyk v. INS, 291 F.3d 172 (2d Cir. 2002) (upheld provision in Illegal Immigration Reform and Immigrant Responsibility Act of 1996 that treated lawful permanent residents differently from non-lawful permanent residents).

## POINT II

**LOCAL LAW 20 OF 2007 DOES NOT VIOLATE THE COMMERCE CLAUSE BECAUSE IT DOES NOT BURDEN INTERSTATE COMMERCE IN ANY WAY. IN ANY EVENT, ANY INCIDENTAL BURDEN ON INTERSTATE COMMERCE IS OUTWEIGHED BY THE LOCAL BENEFIT IT ACHIEVES.**

In support of their Commerce Clause claim (Claim 5), plaintiffs principally contend (Pl. Mem. at 16-18) that Local Law 20 purportedly burdens interstate commerce by subjecting City high school baseball teams to inconsistent regulations when such teams play out-of-state teams who use non-wood bats. See Compl., ¶¶ 69-71. Their contentions fail as a matter of a law.

Set forth in Article 1, Section 8 of the United States Constitution, the Commerce Clause grants to Congress the power "[t]o regulate [c]ommerce ... among the several states." Although the clause speaks only in terms of a power bestowed upon Congress, the United States Supreme Court has long recognized that the commerce clause "limits the powers of the States to erect barriers against interstate trade." Lewis v. BT Investment Managers, Inc., 477 U.S. 27, 35 (1980). However, the dormant Commerce Clause is not "a roving license for federal courts to decide what activities are appropriate for state and local governments to undertake." United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt Authority, 127 S. Ct. 1786 (2007) ("United Haulers").

For example, in United Haulers, the Supreme Court upheld a local flow control ordinance that required all solid waste to be delivered to the government's solid waste management facility. There, a legislative choice was made as to whether the government or the private sector should provide waste management services. Recognizing that waste disposal is

traditionally a local government function, the Court determined that "nothing in the Commerce Clause vests the responsibility for that policy judgment with the Federal Judiciary." United Haulers, 127 S. Ct. at 1796; see Lewis, supra, 477 U.S. at 36 (states and municipalities "retain their authority under their general police powers to regulate matters of 'legitimate local concern,' even though interstate commerce may be affected").

Here also, the legislative choice to restrict the use of non-wood bats in high school baseball games falls outside the ambit of the dormant Commerce Clause because high school sporting rules, which affect the health, safety, well-being, and welfare of schoolchildren, traditionally have been a matter of local concern, and not a federal matter. See, e.g., Guy v. York State Pub. High School Athletic Ass'n, 9 Misc. 3d 1116A, 2005 NY Slip Op 51605U, at *2 (Sup. Ct. Onondaga Co. 2005) (upholding eligibility rule that set a "legitimate goal for the safety and fairness of athletic competition"); NYC Admin. Code § 10-138 (requiring that athletes follow a City code of conduct at all youth sports events); Balt. Admin. Code § 18-102 (requiring baseball players to wear batting helmets with protective faceguards, sports goggles and catcher's safety equipment). Accordingly, the Commerce Clause should not prevent the states "from experimenting and exercising their own judgment in an area to which States lay claim by right of history and expertise, and [it does so] by regulating an activity beyond the realm of commerce in the ordinary and usual sense of that term." United States v. Lopez, 514 U.S. 549, 583 (1995) (struck down federal statute making possession of a gun illegal within 1,000 feet of the grounds of a school) (Kennedy, concurring). [7]

---

[7] Applying plaintiffs' rationale, the law would become static, as no legislature could enact regulations without the simultaneous enactment of the same such legislation in all other jurisdictions. Further, plaintiffs ignore the recent movement of leagues across the country to switch to a wood-only policy. See Ex. D23.

Moreover, even if Local Law 20 implicates the Commerce Clause, it still must stand, because, at most, it affects interstate commerce only incidentally. In determining whether a state or municipality has exceeded its authority to regulate in a manner that affects interstate commerce, the courts have distinguished between regulatory actions that are essentially protectionist measures in that they "affirmatively discriminate against [interstate] transactions," and those that involve the exercise of traditional police powers and "burden interstate commerce only incidentally." Maine v. Taylor, 477 U.S. 131, 138 (1986). While state and municipal actions in the first group are subject to demanding scrutiny under the commerce clause because they promote "economic protectionism," those in the second group are presumptively valid and will not lightly be set aside. L&L Started Pullets Inc. v. Gourdine, 592 F.Supp. 367, 374-75 (S.D.N.Y. 1984), aff'd, 762 F.2d 1 (2d Cir. 1985). Thus, where a state or locality "regulates evenhandedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." Pike v. Bruce Church, Inc., 397 U.S. 137, 142 (1970). Under Pike, plaintiffs bear the burden of showing that "the statute, at a minimum, . . . impose[s] a burden on interstate commerce that is qualitatively or quantitatively different from that imposed on intrastate commerce." United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth., 438 F.3d 150 (2d Cir. 2006), aff'd, 127 S. Ct. 1786 (2007).

For instance, the Supreme Court in Minnesota v. Cloverleaf Creamery, Inc., 449 U.S. 456 (1981), sustained the validity of an evenhanded Minnesota law banning the retail sale of milk in plastic jars against a commerce clause challenge by out-of-state dairies forced to comply with Minnesota's packaging requirements in order to enter the Minnesota marketplace. The Court noted that while the Minnesota marketplace would presumably favor those

manufacturers who produced complying containers, there was "no reason to suspect that the gainers will be Minnesota firms, or the losers out-of-state firms." Id. at 472-73. Thus, the Supreme Court determined that there was little or no burden on interstate commerce.

Here, as in the case of Cloverleaf Creamery, Local Law 20 has not been shown to have a greater negative impact on interstate activities than on intrastate activities. Plaintiffs do not distinguish the purported burdens among intrastate teams and interstate teams. See Pl. Ex. 12, Canale Decl., ¶¶ 11-14 (claiming burdens on the baseball schedule of a private high school in Brooklyn). Plaintiffs, at best, demonstrate that the alleged burden, even if true, would fall nearly exclusively on the City's players, not out of state players; therefore it is a local concern, making the dormant Commerce Clause inapplicable. See United Haulers, 127 S. Ct. at 1797.

Finally, even assuming that Local Law 20 imposes an incidental burden upon interstate commerce — and clearly it does not — that burden is far outweighed by the local benefit it achieves. See United Haulers, 438 F.3d at 156. As in the due process and equal protection context, discussed supra, Local Law 20 fosters high school baseball safety, the traditions and integrity of the game of baseball, and player development, thereby furthering significant local goals. Accordingly, summary judgment should be granted to the defendant on the Commerce Clause claim.

### POINT III

### LOCAL LAW 20 DOES NOT UNLAWFULLY DELEGATE LEGISLATIVE AUTHORITY TO MAJOR LEAGUE BASEBALL.

Plaintiffs argue (Pl. Mem. at 14-16) that Local Law 20 is "unlawful because it conditions the use of wood composite bats on the approval of Major League Baseball." Plaintiffs again miss the point. The City Council did not unlawfully delegate its authority to MLB; it merely referred the testing and selection of wood composite bats to MLB within prescribed

-12-

boundaries, namely that the baseball bats be made of wood composite material, and that they contain no metal, in whole or in part.[8]

It is well-settled that "there is no constitutional prohibition against the delegation of power, with reasonable safeguards and standards, to an agency or commission to administer the law as enacted by the Legislature." Matter of Levine v. Whalen, 39 N.Y.2d 510, 515 (1976); see Citizens for a Safer Community v. City of Rochester, 164 Misc. 2d 822, 836-837 (Sup. Ct. Monroe Co. 1994) (upheld municipal code provision that delegated to chief of police authority to issue gun permits limited to shooting clay pigeons or targets at ranges). As the Court of Appeals has long noted:

> That does not, however, mean that a precise or specific formula must be furnished in a field "where flexibility and the adaptation of the [legislative] policy to infinitely variable conditions constitute the essence of the program." It is enough if the Legislature lays down "an intelligible principle", specifying the standards or guides in as detailed a fashion as is reasonably practicable in the light of the complexities of the particular area to be regulated. Obviously, the Legislature cannot "constitutionally [be] required to appraise beforehand the myriad situations to which it wishes a particular policy to be applied and to formulate specific rules for each situation. Necessity therefore fixes a point beyond which it is unreasonable and impracticable to compel [the Legislature] to prescribe detailed rules".

Matter of the City of Utica v. Water Pollution Control Board, 5 N.Y.2d 164, 169 (1959) (citations omitted). Contrary to plaintiffs' assertion, the mere incorporation of MLB's protocol for testing and selection into Local Law 20 is no argument against constitutionality. See City of

---

[8] Based upon this finding, the Council restricted the use of non-wood bats in two ways. First, as a threshold matter, the Council limited the type of non-wood bats allowed for high school competitive games to those wood laminated and wood composite bats that are approved for Minor League play by MLB (pursuant to its official rules). Second, as an additional safeguard, the Council provided that no bat may be used in high school play that is "made in whole or in part of metal." See Ex. D1 (Local Law 20, § 4). Therefore, if MLB approves a bat made of metal for Minor League play, *by operation of law*, that bat would not be permitted for high school play.

Amsterdam v. Helsby, 37 N.Y.2d 19, 34-35 (1975) (applying the same standards described above and upholding delegation to a private body of arbitrators). "[F]air latitude should be allowed by the court to the legislative body to generate new and imaginative mechanisms addressed to municipal problems." 8200 Realty Corp. v. Lindsay, 27 N.Y.2d 124, 132 (1970) (upheld legislative role given to Real Estate Industry Stabilization Association). Plaintiffs' reliance on Fink v. Cole, 302 N.Y. 216 (1951), is misplaced.[9] There, the legislature delegated full licensing authority for racing to the private Jockey Club, without any standards. See Marcy v. Federal Aviation Admin., 1991 U.S. App. LEXIS 13904 (10th Cir. 1991) (noting that the FAA is authorized to designate properly qualified persons in the private sector to act as structural engineering representatives of the FAA for the purpose of examining and approving certain aircraft engineering data).

In light of the ever-changing and sophisticated developments in baseball bat technology, it was reasonable for the City Council to rely on the expertise of MLB for testing and selection within the limits specified in the statute. See Wilmot, Baseball Bats in the High Tech Era: A Products Liability Look at New Technology, Aluminum Bats, and Manufacturer Liability, 16 Marq. Sports L. Rev. 353 (2006). "The extensive adoption of privately-developed standards indicates a reliance on private expertise but cannot be considered actual privatization of the lawmaking function." See Royal Ins. Co. of America v. Ru-Val Electric Corp., 918 F. Supp. 647, 654 (E.D.N.Y. 1996) (Weinstein, J.).

---

[9] Plaintiffs also rely on Atlantic-Inland v. Union, 126 Misc. 2d 509 (N.Y. Sup. Ct, Broome Co. 1984). See Pl. Mem. at 15, n. 6. However, in Atlantic-Inland, the plaintiff agreed that it was appropriate for a town to delegate the authority to conduct electrical inspections. The salient issue in that litigation was that the law delegated inspections to the plaintiff's competitor, to the exclusion of plaintiff. That issue is not germane here. No plaintiff in this litigation seeks to have delegated to it the authority that has been delegated to MLB.

In addressing the issue of governmental immunity from tort liability, Judge Jack Weinstein recognized that it was permissible for a town to delegate the responsibility for performing electrical inspections to the New York Board of Fire Underwriters, a private entity with expertise in decreasing fire losses, and apply the National Electrical Code, a set of safety standards developed and adopted by the National Fire Prevention Association (a private, voluntary organization), for those inspections. Id. at 654; see Syracuse v. Penny, 59 Misc. 2d 818 (Sup. Ct. Onondaga Co. 1969); North American Safety Valve Industries, Inc. v. Wolgast, 672 F. Supp. 488 (D. Kan. 1987) (secretary of department of human resources, "in adopting by reference the National Board's Inspection Code [regulating boilers], has not delegated legislative authority to a private entity").

Local Law 20 provides sufficient limitation in its delegation to Major League Baseball to meet constitutional muster. See Biener v. Calio, 361 F.3d 206 (3d Cir.), cert. denied, 543 U.S. 817 (2004). The City Council has set the standard that really matters – no metal, in whole or in part. In Biener, the Third Circuit upheld a Deleware statute that authorized political parties to set the filing fee amount for election primaries "so long as it does not exceed 1% of the total salary for the term of office the candidate seeks." Id. at 216-217. The Third Circuit reasoned that the state sufficiently limited the private party's discretion by making the private party operate within established limitations – a cap on the filing fee. Id. Similarly, Local Law 20 provides a limitation on the type of bat that may be used by requiring that such bat not contain metal in whole or in part.

Moreover, the evil that private parties will exercise selfish or arbitrary motivations or whims is not present here. See General Electric. Co. v. New York State Dep't of Labor, 936 F.2d 1448, 1455 (2d Cir. 1991) (state's reliance upon the collective bargaining

process to determine prevailing wage rates made the legislative process "potentially subservient to selfish or arbitrary motivations"). Here, MLB's interest in preserving traditional wood bat play is aligned completely with the City's interest in allowing only wood bats in high school games. See Popa Decl., ¶¶ 35-36; Ex. D21 at 4 ("Major League Baseball . . . will never allow the use of high-performance metal bats in its games."); Popa Decl., ¶ 35-36; Towne Construction Co. v. Occupational Safety and Health Review Commission, 847 F.2d 1187, 1190 (6th Cir. 1988) (expressly declining to question the right of the Secretary of OSHA "to adopt the fruits of private efforts as governmental standards"). Moreover, MLB has obligations to its members under its charter to maintain the "integrity of, public confidence in, the national game of Baseball." See Pl. Ex. 21 (Major League Constitution, Art. II., Sec 4 and Art. III., Sec. 2). Contrary to plaintiffs' unsupported assertion, the fact that private standards may change over time is of no moment. See Royal Ins. Co., 918 F. Supp. at 654 ("Municipalities affirmatively adopt the [National Electrical Code] and retain the authority to modify or repeal ordinances."). Plaintiffs' other arguments dispute the choice of delegation, and therefore fail for the same reasons identified in Point I of this brief concerning the rationality standard. The delegation to MLB to approve bats for high school competitive games in New York City is constitutional, as the law reasonably relies upon MLB's expertise to achieve a well-defined legislative objective.

For the foregoing reasons, the City respectfully requests that this Court grant summary judgment in its favor on Claims 4 and 8 of the complaint.

## POINT IV

**LOCAL LAW 20 WAS PROPERLY ENACTED PURSUANT TO THE COUNCIL'S BROAD HOME RULE POWERS. LOCAL LAW 20 IS A REGULATION, NOT A PROHIBITION; BOTH OF WHICH ARE AUTHORIZED.**

Plaintiffs argue (Pl. Mem. at 12-14) that the City did not have the authority to enact Local Law 20 under its home rule powers. The state constitution and laws give a local legislature broad authority to adopt local laws for the purpose of protecting the safety, health, well-being, and welfare of its persons. See N.Y. Const. art. IX, § 2(c); N.Y. Mun. Home Rule Law § 10(1)(a)(12); N.Y. General City Law art. 2-A, § 20(13). Plaintiffs do not dispute that the City's home rule powers permit it to enact laws for the safety of its citizens.[10] Rather, plaintiffs argue that the City exceeded its home rule powers by enacting a law that does not bear a reasonable relationship to its purpose. Quite simply, plaintiffs' home rule argument is a recast of its equal protection and due process arguments addressed in Point I above. Accordingly, summary judgment should be granted to defendant on the sixth claim in the complaint.

**A.    Local Law 20 Constitutes a Regulation, Not a Prohibition, and the Council's Home Rule Authority Includes the Power to Prohibit.**

Plaintiffs contend that Local Law 20 impermissibly bans non-wood bats because the Council's home rule powers supposedly permit it to regulate, but not prohibit, such bats. See Compl. ¶ 77-79; Pl. Mem. at 11-12. This argument misrepresents the scope of the statute. Local

---

[10] The New York State Constitution, the State Municipal Home Rule Law (the "MHRL"), and the State General City Law give local legislatures broad authority to adopt local laws for the purpose of protecting the safety, health, well-being, and welfare of persons within the City. See N.Y. Const. art. IX, § 2(c); N.Y. Mun. Home Rule Law § 10(1)(a)(12) (also authorizing local legislatures to regulate businesses); N.Y. General City Law art. 2-A, § 20(13); see also N.Y. Mun. Home Rule Law §§ 50(1), 51 (McKinney 1994) (local legislatures shall "fully and completely" exercise the home rule powers granted to them under "the terms and spirit" of Article IX, and the MHRL "shall be liberally construed.").

Law 20 does not prohibit non-wood bats; it merely regulates their use. Moreover, it is well-settled that the Council's power to regulate pursuant to its home rule powers includes the power to prohibit. Accordingly, even if Local Law 20 could be considered a prohibition, it still should be deemed a valid exercise of the Council's home rule powers.

The statute makes clear that Local Law 20 does not ban non-wood bats. Rather, Local Law 20 regulates the use of such bats by prescribing the type of bat to be used only in competitive high school baseball games, where there is an obvious increase in the hitting power of players. Non-wood bats may be used under all other circumstances, including high school practices, junior high school games, "pick-up" games in the park, and all youth league games that are not sponsored by a school.[11] Courts repeatedly have upheld local laws that restricted far more conduct than Local Law 20. See, e.g., Beatie, supra; New York City C.L.A.S.H. v. City of New York, 315 F. Supp. 2d 461, 467 (S.D.N.Y. 2004) (restricting cigarette smoking in "virtually all indoor locations in New York City where people work or socialize."); People v. Ortiz, 125 Misc. 2d 318 (Crim. Ct. Bronx Co. 1984) (prohibiting individuals from possessing knives with blade lengths of four inches or more in any public place, street, or park). Moreover, the Council's authority to regulate includes the power to prohibit, so even if Local Law 20 could be deemed a prohibition, it is still a valid exercise of the Council's home rule powers. See, e.g., Richmond Boro Gun Club, Inc. v. City of New York, 896 F. Supp. 276 (E.D.N.Y. 1995), aff'd, 97 F.3d 681 (2nd Cir. 1996) (upholding a local law completely banning the storage and use of certain rifles within the City); City of New York v. Job-Lot Pushcart, 88 N.Y.2d 163 (1996) (banning sale,

---

[11] In fact, plaintiff USA Baseball is the umbrella organization for several youth baseball associations, including American Legion baseball, Pony League baseball and Babe Ruth League baseball (see Compl. at ¶ 7), whose bat preferences will not be affected by Local Law 20. Likewise, plaintiff Mel Zitter manages the Youth Service League, another baseball club whose bat choices remain unaffected by Local Law 20.

use, or possession of all toy guns that resemble actual firearms); <u>cf.</u> <u>New York City Friends of</u> <u>Ferrets v. City of New York</u>, 876 F. Supp. 529 (S.D.N.Y. 1995) (upholding City Department of Health regulations prohibiting ownership of ferrets as pets).

Plaintiffs ignore this well-established principle that the Council's home rule powers include the power to prohibit conduct. Instead, plaintiffs rely on several inapposite cases involving local laws that prohibited conduct in specific policy areas that the State Legislature made clear could be regulated, but not prohibited. <u>See, e.g.,</u> <u>S.E. Nichols Herkimer Corp. v.</u> <u>Village of Herkimer</u>, 34 A.D.2d 371 (4th Dep't 1970) (N.Y. Gen. Village Law § 86 only permitted localities to regulate business activities conducted on Memorial Day); <u>Good Humor</u> <u>Corp. v. City of New York</u>, 264 A.D. 620, 625 (2d Dep't 1942) (street peddling ban violated explicit State policy); <u>Peace v. McAdoo</u>, 110 A.D. 13 (2d Dep't 1905) (NYC Charter sections 300 and 315 only authorized the police commissioner to "regulate" traffic on the streets); <u>Koston</u> <u>v. Town of Newburgh</u>, 45 Misc. 2d 382 (Sup. Ct. Orange Co. 1965) (prohibitive zoning ordinance was preempted by express State policy in favor of regulating mobile homes). In sum, Local Law 20 regulates, and does not prohibit, the use of aluminum bats in New York City. Further, even if Local Law 20 can be considered prohibitory legislation, the Council's home rule power to regulate includes the authority to prohibit. Accordingly, the City respectfully requests that this Court grant summary judgment in its favor on the seventh claim in the complaint.

**B.    The Legislative Intent of the Council Warrants in Favor of Severability And Strongly Against Complete Invalidation of Local Law 20**

Assuming *arguendo* that the Court adopts any of plaintiffs' constitutional or legislative delegation arguments concerning wood composite bats, the Court should sever the

one clause in Local Law 20 that relates solely to wood composite bats.[12]  Severability is a matter

of state law.  See Leavitt v. Jane L., 518 U.S. 137, 139 (1996).  Under New York state law, the

controlling factor is the intent of the legislature.  See People v. Knapp, 230 N.Y. 48, 60 (1920)

("In this state, we have gone far in subdividing statutes, and sustaining them so far as valid.");

Association of Surrogates & Supreme Court Reporters v. State, 79 N.Y.2d 39, 47-48 (1992);

Ricketts v. City of New York, 181 Misc. 2d 838, 844 (Sup. Ct. N.Y. Co. 1999).  New York law

requires that courts sever statutory provisions when the legislature would have wished the

remaining provisions of a statute to be enforced if partial invalidity had been anticipated.  See

Knapp, 230 N.Y. at 60; Association of Surrogates, 79 N.Y.2d 47-48; Ricketts, 181 Misc. 2d at

844.

      The New York City Administrative Code contains a provision that requires

severing, from all City laws, any provision that a court deems invalid.  N.Y.C. Admin. Code § 1-

105.  That severability provision makes clear that, as a general matter, the Council prefers

severability rather than complete invalidation.  Further, here, the legislative record makes clear

that the primary impetus for Local Law 20 was a safety concern relating to the risk of injury

resulting from non-wood bats.  See Ex. D1 (Local Law 20, § 1).  The decision to allow wood

composite bats, in addition to bats constructed entirely of wood, was based upon an incidental

concern about the increased durability and cost-effectiveness of such bats.  See Ex. D24

(Swanson letter); Ex. D16 at 111-16.  "Where the severed portions of a statute are incidental to

---

[12] Section 4 of Local Law 20 states: "'Wood bat' shall mean any baseball bat constructed exclusively of wood or any wood laminated or wood composite bat, which is approved by major league baseball, pursuant to such organization's official rules, for major league or minor league play; provided that such term shall not include any bat made in whole or in part of metal, including, but not limited to, aluminum, magnesium, scandium, titanium or any other alloy compound." Ex. D1 (emphasis added). The portion of Section 4 of Local Law 20 that is not underlined is the only part of Local Law 20 that relates solely to wood laminated and wood composite bats.

the main purpose of the statute, that portion may be removed with the rest of the statute remaining intact." Ricketts, 181 Misc. 2d at 844; see Knapp, 230 N.Y. at 60 (severing a statute in order to "leave the essence of the scheme intact"). Accordingly, the City respectfully requests that, if this Court is persuaded by plaintiff's equal protection and legislative delegation arguments, it sever the clause permitting the use of wood laminated and wood composite bats as authorized by Major League Baseball, and otherwise uphold Local Law 20.

## POINT V

### PRELIMINARY INJUNCTIVE RELIEF SHOULD BE DENIED TO PLAINTIFFS.

To obtain a preliminary injunction against the City's enforcement of the new law, plaintiffs must show both irreparable injury and a likelihood of success on the merits. See NAACP v. Town of East Haven, 70 F.3d 219, 223 (2d Cir. 1995); Plaza Health Lab., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989). As demonstrated above, plaintiffs failed to establish a likelihood of success on the merits of any of their claims.

Plaintiffs also fail to demonstrate irreparable injury, or *any* injury, as a result of Local Law 20. See Compl., ¶¶ 42-55. Plaintiff USA Baseball is the umbrella organization for several youth baseball associations (Compl., ¶ 7), whose bat preferences will not be affected by Local Law 20. Plaintiffs argue (Pl. Mem. at 22) that high school athletes active in these leagues will be forced to purchase two sets of bats or quit the leagues entirely. However, the record indicates that a number of parents, coaches and players who play with non-wood bats in competitive games already own wood bats, in part so players may hone their baseball skills. See Popa Decl., ¶31 ; Pl. Ex. 9, Berg Decl. ¶4 (son prefers playing with wood); Pl. Ex. 10, Navarro Decl. ¶3 (son has played with both wood and metal). Further, to the extent that a player will purchase an additional set of bats, this is a *de minimus* expense that does not outweigh the

-21-

Council's rational determination that Local Law 20 will safeguard the safety, health, well-being and welfare of City children. See Methodist Hospital of Brooklyn v. New York State Labor Relations Board, 382 F. Supp. 459 (S.D.N.Y. 1974) (de minimus "injury" does not constitute irreparable harm).

Second, plaintiffs' claim that players will quit the leagues entirely is speculative. Plaintiffs offer no proof that the adoption of a wood-only policy will cause players to quit the game of baseball, and the legislative record shows instances where leagues that have made the switch to wood have experienced great success, including an increase in participation. See Ex. D17 (Guarino testimony); Ex. D23; Ex. D24 (Swanson statement). Plaintiffs' de minimus and speculative harm is far from the irreparable and imminent injury that is required to justify the extreme remedy of injunctive relief. See Grand River Enter. Six Nations, Ltd. v. Pryor, 481 F.3d 60 (2d Cir. 2007); Flood v. Kuhn, 309 F. Supp. 793, 799 (S.D.N.Y. 1970).

Likewise, no irreparable harm will befall the plaintiffs who are coaches, and players and their parents. These plaintiffs argue (See Pl. Mem. at 21) that they will be harmed because "the game will be less fun" and "less competitive" for their children and players, and that their children and players will be disadvantaged in the college recruiting process. These arguments about fun and competition are based on the premise that an increased number of harder hits and higher scoring games result in more fun and competition. Plaintiffs fail to explain why a lower-scoring, close game is less competitive than a higher-scoring, close game. It is clear from the legislative record that a number of players and coaches place a premium value on the competitiveness, tradition, pure skill and enjoyment of playing baseball with a wood bat. See Popa Decl. ¶¶28-32. Furthermore, plaintiffs offer no explanation of how to value the "fun" of hitting. Testimony and documentation reveal that the use of non-wood bats is dangerous and

increases the risk of injury to players – which makes the game of baseball decidedly "less fun"—particularly for infielders who are at the greatest risk for batted ball injuries. See Popa Decl., ¶¶ 26-27 (testimony of injured players). Additionally, plaintiffs' own evidence contradicts their suggestion that all hitters equate easiness with "fun." See Pl. Ex. 9, Berg Decl., ¶ 4 (parent noting that his son "enjoys using wood bats").

  More importantly, even if plaintiffs could establish that Local Law 20 will result in a loss of fun and lower competition, these "injuries" would be insufficient to warrant injunctive relief. There is ample authority that students do not suffer irreparable harm by not being allowed to engage in all forms of athletic competition and enjoy the fun provided by such competition. See Kampmeier v. Nyquist, 553 F.2d 296, 300 (2d Cir. 1977) (finding no irreparable harm and a permissible restriction on athletic ability where a school prohibited students who lacked vision in one eye from participating in contact sports); Connor v. Board of Education, 645 F.2d 578, 580-81 (7th Cir. 1982) (no irreparable harm where female student was denied the opportunity to try out for the boys' basketball team, where the only difference between the teams was "the level of competition," because there is "no fundamental right to develop" as an athlete).[13]

  Plaintiffs also fail to support their argument that students will be disadvantaged in the college recruiting process, and the legislative record strongly suggests to the contrary. See Ex. D20 (scout and baseball coach from North Dakota indicating that a significant number of college coaches supported the switch to wood for North Dakota high schools because it will help

---

[13] Plaintiffs cite two inapposite cases, in which athletes were denied *any* opportunity to compete at all in their respective sports. See McCormick v. Mamaroneck, 370 F.3d 275 (2d Cir. 2004) (school district scheduled team so as to prevent access to state championships); Roberts v. Colorado State Bd. of Agric., 998 F.2d 824 (10th Cir. 1993) (university discontinued softball program).

them recruit quality players).   The legislative record supports the view that use of wood bats is closely tied to a player's growth and development.  See Popa Decl., ¶¶ 28-32.

Plaintiffs also argue (See Pl. Mem. at 22) that the four plaintiff baseball bat manufacturers and distributors – Easton Sports, Wilson Sporting Goods, Rawlings Sporting Goods, and Hillerich & Bradsby (the "Companies") – will lose significant sales and suffer harm to their reputation and goodwill if Local Law 20 is enforced.   As to loss of revenue, plaintiffs state that high school players will purchase more bats as a result of Local Law 20, because they will now purchase wood bats for City high school play and non-wood bats for play elsewhere. See Comp. ¶ 47; Pl. Ex. 9, Berg Dec. ¶ 5; Pl. Ex. 10, Navarro Dec. ¶¶ 4, 5; Pl. Ex. 11, Seiler Dec. ¶ 9; Pl. Ex. 12, Canale Dec. ¶¶ 10, 16; Pl. Ex. 17, Zitter Dec. ¶ 13.  Plaintiffs ignore the necessary conclusion of their own argument - that more purchases by players will result in increased sales for plaintiff Companies.   Accordingly, plaintiffs' own submissions belie their claim of economic harm.

Plaintiffs also fail to support their claim that the Companies will suffer a loss of goodwill.  Plaintiffs rely completely on factually inapposite cases that involved deliberate and crippling sabotage to the moving party's reputation or goodwill for the sole purpose of economic gain by another party.  See, e.g., Warner-Lambert Co. v. Northside Development Corp., 86 F.3d 3 (2d Cir. 1996) (defendant intentionally misled consumers as to freshness of the product).  Here, the Companies do not allege that the City intended to injure their reputation or goodwill.  More importantly, any injury to their reputation or good will is self-inflicted by their advertising campaign to hype the power of non-wood bats. See Horowitz Decl., ¶¶ 4-6.[14]

---

[14] USA Baseball and its member athletic leagues also may not claim a loss of goodwill, because the public is well aware that USA Baseball and its member leagues permit bats that are advertised in this manner,

## CONCLUSION

**SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANT AND PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT SHOULD BE DENIED.**

Dated:          New York, New York
                June 19, 2007

                                    MICHAEL A. CARDOZO
                                    Corporation Counsel of the City of New York
                                    Attorney for Defendant
                                    100 Church Street, Room 5-189
                                    New York, New York 10007
                                    (212) 442-0589

                          By:       _____
                                    Jerald Horowitz (JH8395)
                                    Assistant Corporation Counsel
                                    Administrative Law Division

GABRIEL TAUSSIG,
JERALD HOROWITZ,
                    Of Counsel.
LAUREN G. AXELROD,
ALVIN L. BRAGG, JR.,
LAURA J. POPA,
            On the Memorandum.

---

and the Companies' sponsorship is prominently featured on their websites with links to such advertised products.

-25-