**8**

James Easton - Direct
Tue./1-11-05/Vol. 17                    80

1    A.   Yes.

2    Q.   It says, "When we reached our settlement with the NCAA

3    on the bat issue, the NCAA released a statement saying that

4    there would be no changes made for three years unless

5    necessary." Do you see that?

6    A.   Yes.

7    Q.   That was something that you had negotiated with

8    Mr. Dempsey; isn't that correct?

9    A.   Our attorneys negotiated that.

10   Q.   You didn't negotiate directly with him on that?

11   A.   Well, I probably mentioned it, but I didn't do the

12   negotiations.

13   Q.   Well, didn't you tell me in your deposition that that

14   was a sticking point, that you and Mr. Dempsey sort of had

15   to work it out together?

16   A.   Yes, but we didn't negotiate.  I just told him my

17   opinion.

18   Q.   But that had been a sticking point, the settlement

19   wasn't going to go through from your point in view unless

20   you had a three-year moratorium; is that correct?

21   A.   Well, that was one of the sticking points, certainly.

22   Q.   And the other sticking point was the 97-mile-an-hour

23   limit, wasn't it?

24   A.   Yes.  We had asked for 98.

25   Q.   Excuse me?

                98-72946; Baum, et al. v. H&B, et al.

NYC0003348

James Easton - Direct
Tue./1-11-05/Vol. 17                        118

1   BY MR. ROMANO:

2   Q.   The team that was using the wood bats wouldn't be able

3   to hit as many home runs and hits as the team with the

4   aluminum specialty bats during the College World Series,

5   would they?

6   A.   In 1995, they wouldn't.

7   Q.   Let's move on to PX666.  PX666 is the settlement

8   agreement between Easton and the NCAA relating to the

9   litigation that was alluded to earlier; is that correct?

10  A.   Yes.

11  Q.   That settlement agreement incorporates as one of the

12  exhibits attached as Exhibit A the protocol adopted by NCAA

13  dated September 27, 1999, does it not?

14  A.   Let me take a look.

15  Q.   It's Exhibit A, EA210347.

16  A.   Yes, that is correct.

17       MR. ROMANO:  If you go to Page EA210356, and I

18  think actually the criteria, the pass-fail criteria box in

19  the bottom of the previous page, but if you go to the third

20  line, third separated line, if you would blow that up

21  please.

22  BY MR. ROMANO:

23  Q.   It says, The bat's BESR must be less than .728, which

24  corresponds to 97 miles per hour.  Do you see that?

25  A.   Yes.

        98-72946; Baum, et al. v. H&B, et al.

        01/11/05 Trial Tr. (Easton)              Page 118

James Easton - Direct
Tue./1-11-05/Vol. 17                    119

1    Q.   That was part of the settlement, was it not?

2    A.   I don't recall that was part of the settlement.  It

3    wasn't in the settlement document, it was in the attachment.

4    I assume that would apply, yes.

5    Q.   But if you go to Page 2 of the settlement and you look

6    at 2A, you see that, and the second line, the second

7    sentence in 2A?

8    A.   2A?

9    Q.   2A, second line.

10   A.   Okay.

11   Q.   It says, Based on an NCAA approved dynamic test, which

12   includes a set and controlled pitch and bat swing speed as

13   implemented in an NCAA approved proved protocol, effective

14   as of January 1, 2000, the batted ball exit speed for all

15   bats other than solid white ash wood bats shall be up to,

16   but less than, 97 miles an hour.

17        Wasn't that a condition of the settlement?

18   A.   I believe so.

19   Q.   And this also has attached as an exhibit, which is

20   Exhibit B is a form press release that was approved as part

21   of the settlement, is that correct?

22   A.   What page, C, Exhibit C?

23   Q.   Exhibit B.

24   A.   Okay, yes.

25   Q.   And then if you go to EA210362, do you see that?

         98-72946; Baum, et al. v. H&B, et al.

NYC0003359