John F. Collins (JC 9324)
DEWEY BALLANTINE LLP
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000

David A. Ettinger (P26537)
Jeffrey H. Kuras (P66036)
HONIGMAN, MILLER, SCHWARTZ AND COHN, LLP
660 Woodward Avenue
2290 First National Building
Detroit, MI 48226-3506
(313) 465-7368

Attorneys for Plaintiffs


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

USA BASEBALL, THE NATIONAL HIGH
SCHOOL BASEBALL COACHES ASSOCIATION,
DR. PETER BERG, JUAN HERNANDEZ, DENNIS
CANALE, MEL ZITTER, MICHAEL CRUZ, TITO
NAVARRO, JOHN TORRES, EASTON SPORTS,
INC., WILSON SPORTING GOODS CO.,
RAWLINGS SPORTING GOODS COMPANY, and
HILLERICH & BRADSBY COMPANY, INC.

                              Plaintiffs,

          - against -

CITY OF NEW YORK,

                            Defendant.

-------------------------------------------------------------X

Civil Action No. 07-CV-3605

**PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT AND PRELIMINARY INJUNCTION**

DETROIT.2670854.36

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................ i

I.      INTRODUCTION ......................................................................... 1

II.     THE BAT ORDINANCE IS NOT AUTHORIZED UNDER THE POLICE POWER OR
        NEW YORK DUE PROCESS LAW ................................................ 1

III.    THE BAT ORDINANCE IS AN UNLAWFUL PROHIBITION ...................... 5

IV.     THE BAT ORDINANCE INVOLVES UNLAWFUL DELEGATION OF A
        LEGISLATIVE FUNCTION TO A PRIVATE PARTY ........................... 9

        A.      The City's Arguments On Delegation Are Incorrect .............. 9

                1.      The Nature Of The Delegation ................................. 9

                2.      Major League Baseball's Motivation ....................... 12

                3.      The City's Case Law Is Irrelevant ......................... 14

        B.      Severance Is Improper Here ........................................ 15

V.      THE BAT ORDINANCE IMPERMISSIBLY BURDENS INTERSTATE COMMERCE 18

VI.     THE BAT ORDINANCE VIOLATES EQUAL PROTECTION AND FEDERAL DUE
        PROCESS STANDARDS .............................................................. 20

VII.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION .......... 22

VIII.   CONCLUSION ........................................................................ 24

## I.  <u>INTRODUCTION</u>

New York City's Memorandum in Response to Defendant's Memorandum of Law in

Support of its Motion for Summary Judgment and in Opposition to Plaintiffs' Motions for

Summary Judgment and for Preliminary Injunction ("City Memo") relies on a series of

irrelevancies and misstatements of the record and the law.  Its arguments provide no basis on

which to conclude that the Bat Ordinance promotes health or safety.

## II.  <u>THE BAT ORDINANCE IS NOT AUTHORIZED UNDER THE POLICE POWER OR NEW YORK DUE PROCESS LAW</u>

The City's attempt to justify the Bat Ordinance as a proper use of its police power relies

on a wide variety of materials in the record, but no science and no logic.  It offers only a series of

irrelevancies which cannot establish a "fair, just and reasonable connection between [the Bat

Ordinance] and the promotion of the health, comfort, safety and welfare of society." *People v.*

*Bunis*, 9 N.Y.2d 1, 4, 172 N.E.2d 273, 210 N.Y.S.2d 505 (1961).

Most revealing is what is *not* included in the City's citations:  any data showing that the

use of non-wood bats has made baseball less safe.  Without this connection to "safety and

health," the City simply has no authority to act.  General City Law, Article 2-4, § 20(13)

(granting City the power to "regulate . . . business" in order to "care for the safety and health . . .

of the inhabitants of the city").  The City offers nothing to rebut the massive evidence presented

by Plaintiffs that baseball is extremely safe, the rate of injury from batted balls is extremely low,

and that rate of injury has been constant or declining.  See Plaintiffs' Memorandum of Law in

Support of Motion for a Preliminary Injunction and Motion for Summary Judgment ("Plaintiffs'

Initial Brief") at 6-8, Declarations of Verhalen, Kirby.  Given this fact, everything that the City

cites (besides its many other flaws) is simply irrelevant.

1

The City has also failed to provide any evidence to justify banning all bats of a given material, given the wide variations in performance of these bats, and the obvious available mechanisms to regulate these bats. See Plaintiffs' Initial Brief at 6, 8; Greenwald Decl. at ¶¶ 4, 6.[1] The City argues that non-wood bats result in greater batted ball speed because they are allegedly easier to swing and have a "trampoline effect." City Memo at 5-6; Popa Decl. at ¶¶ 19, 24. But, these facts (even if assumed true) can only result in a greater batted ball speed if they are not offset by other characteristics of these bats. Yet the undisputed evidence establishes the "trampoline effect" of particular metal bats may be offset by the greater "handle flex" in wood bats. Chauvin Decl. at ¶ 9. The evidence also shows that the faster swing speed from a lighter bat is offset by the effect of less mass on the ball. Chauvin Second Decl. at ¶¶ 13-14. In any event, these efforts can be controlled by regulation. Id. at ¶ 12; Chauvin Decl. at ¶¶ 4-10; Chou Decl. at ¶¶ 5-7.

Most importantly, one cannot conclude from the allegation that a metal bat can under some circumstances hit a ball faster than a wood bat that the metal bat is unsafe. No such evidence has been provided by the City. As Plaintiffs have shown and the City cannot dispute, the unrebutted scientific evidence shows that even the alleged potential difference between some metal bats and some wood bats is simply too small to have any effect on safety. See Plaintiffs' Initial Brief at 8, Breen Decl. at ¶¶ 14-15, Chauvin Second Decl. at ¶ 19. Indeed, the scientists the City cites themselves endorse the current regulations and do not believe there is a safety

---

[1] In arguing the relevance of two products liability cases, see City Memo at fn.4, the City ignores the point, see Plaintiffs' Initial Brief at 10, fn. 3, that these products liability cases only speak to the safety of two *particular* models of metal bats (indeed, in these cases, bats that predated current regulations and are not currently sold). See e.g., *Sanchez v. Hillerich & Bradsby Co.*, 104 Cal. App. 4th 703, 707, 128 Cal. Rptr. 2d 529 (Cal. App. 2d Dist. 2002) (stating that the injury occurred on April 2, 2002 and new regulations of metal bats became effective August 1, 1999). Therefore, they are doubly irrelevant to the decision to ban all metal and nonwood composite bats.

2

concern. *See* Popa Decl. at ¶¶ 21-24, Chauvin Second Decl. at ¶¶ 21, 23. The unsupported logical leap from a mere potential difference in batted ball speed to a difference in safety is a flaw in the City's position that it simply cannot surmount.

What the City does provide is argument that *current* regulation is not adequate, see Popa Decl. at ¶ 15; there have been a few serious injuries and even deaths from batted balls hit with metal bats, *Id.* at ¶ 26; and some observers believe (albeit without scientific support) that current metal bats are unduly dangerous. *Id.* at ¶ 27. None of these assertions, can justify the Bat Ordinance or remedy its deficiencies outlined in Plaintiffs' Initial Brief:

- The argument that current regulation may be controversial may at most justify *different* regulations, but does not justify complete prohibition. Changes in regulation can readily be made. See Plaintiffs' Initial Brief at 10, fn. 2, Chauvin Second Decl. at ¶ 3, and discussion, *infra*.[2]

---

[2] It is also worth noting that the City's (irrelevant) arguments on the alleged deficiencies of current regulations reflect no more than an obvious misreading of the record. The City's argument that the NCAA regulations are insufficient, the centerpiece of its justification of the Bat Ordinance, amounts to the assertion that 93 mph is needed to allow a pitcher to react within .4 seconds. See Popa Decl. at ¶ 18; Defendant's Counter Rule 56.1, Statement of Undisputed Material Facts at ¶¶ 55-57. As explained in the Second Decl. of Dewey Chauvin at ¶ 7, the NCAA has admitted that this figure was based on the use of a reaction time figure that was never supported by any scientific research, and an elementary physics error, calculating the relevant speed without considering the effects of air resistance. Correction of only the second elementary error would have resulted in a mph figure of 97 mph, the very figure that the City (incorrectly) says applies today and which it says is wrong. See Popa Decl. at ¶ 18, Chauvin Second Decl. at ¶ 7. The Popa declaration also completely ignores the fact that the NCAA then approved a "blue ribbon" scientific Baseball Research Panel, which corrected these errors and guides the regulatory process, even today. *Id.* at ¶¶ 5, 10.

This is all based on materials in the record in this case. The City Council simply failed to consider what was submitted, and its "reasoning" ignores the simple, and undisputed, historical facts. Moreover, the City ignores the fact that the NCAA at all times was considering only regulation of metal bats. Any dispute was about the nature of the regulation, as prohibition was never seen as necessary.

3

- The fact that a few injuries have occurred with metal bats in a very safe sport provides no indication that these injuries were due to the material of the bat. Indeed, all the data indicates the contrary. Plaintiffs' Initial Brief at 6-8; Greenwald Decl. at ¶ 3. Of course, the record contains references to more instances of deaths from balls hit off wood bats than metal bats. *See* Chauvin Second Decl. at ¶ 17 and Ex. N to Chauvin Second Decl., Kirby Decl. at 8.

- Perceptions and allegations unsupported by evidence are simply inadequate under New York case law. "[T]he perception of health risks" must "be reasonable [and] scientifically based . . ." *Cellular Tel. Co. v. Village of Tarrytown*, 209 A.D.2d 57, 67, 624 N.Y.S.2d 170 (N.Y. App. Div.2d Dep't 1995).

The City's assertions are therefore far from sufficient to justify the Bat Ordinance. The relationship between the Bat Ordinance and any legitimate concerns is "too attenuated a connection . . . to sustain its validity." *Trio Distributor Corp. v. Albany*, 2 N.Y.2d 690, 695, 143 N.E.2d 329, 163 N.Y.S.2d 585 (1957).

The City completely ignores this case law and the other "police power" law cited by Plaintiffs, see Plaintiffs' Initial Brief at 14, and simply asserts, without authority, that "Plaintiffs' home rule argument is a recast of its equal protection and due process arguments addressed in point one above." City Memo at 17. However, Defendant cites no case law whatsoever for this unfounded proposition and (as it does throughout its memorandum) largely ignores the substantial case law (especially New York state case law) cited by Plaintiffs.

4

Moreover, the City never specifically explains why it claims that *due process* issues can be treated identically under New York state law and federal law, and cites no cases that so state.[3] Thus, the City never rebuts the case law and legal argument presented in Plaintiffs' Initial Brief at 20 regarding the greater willingness of the New York state courts to strike legislation on due process grounds. Following those New York state cases, the evidence here shows no "reasonable" relationship between a proper objective and the Bat Ordinance, for the reasons discussed *supra*.

In fact, perhaps recognizing the weakness of its health and safety arguments, the City resorts to the argument that the Bat Ordinance is justified "due to concerns about . . . the traditions and integrity of the game of baseball on player development." City Memo at 3. The City thus advances the proposition that it (not the coaches, players, leagues or associations now governing baseball) is entitled to decide how the game of baseball is best played in New York. Perhaps next, the City Council will ban the designated hitter rule, or allow the Yankees and Mets four strikes in each at bat. The City simply does not have the authority to act on such fanciful notions, and they are utterly irrational.

## III.  THE BAT ORDINANCE IS AN UNLAWFUL PROHIBITION

These deficiencies are particularly compelling because the Bat Ordinance is an unlawful prohibition in a context where regulation would meet any alleged concerns. The City's response to this argument is to claim that the Bat Ordinance regulates, but does not prohibit. City Memo at 17-18. But this denies reality. The Bat Ordinance itself is entitled "*Prohibition* of use of non-wood bats." New York City Administrative Code § 10-165. (Emphasis added).

---

[3] The only case the City does cite for this proposition, *Golden v. Clark,* 76 N.Y.2d 618 (1990), see City Memo at 4, n. 3, does not even address due process.

The City argues that because these bats can still be used outside of high school games, for example in practice and in amateur leagues, they are not in fact prohibited.[4] But as the New York case law makes abundantly clear, a partial prohibition is still a prohibition. See Plaintiffs' Initial Brief at 12.

In simple English, a prohibition forbids a practice or product, and a regulation affects how it may be offered. See WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 992, 940 (1988) defining "regulate" as "to bring under the control of law or constituted authority . . . to fix or adjust the time, amount, degree, or rate of," and defining "prohibit" as "to forbid by authority." Refusing to permit metal bats is prohibition; controlling their exit speed, moment of inertia or length is regulation.

The City next argues that there is no special burden placed on a prohibitory act, but the cases the City cites for this proposition are irrelevant. *Beatie v. City of New York*, 123 F.3d 707 (2d Cir. 1997); *New York City C.L.A.S.H. v. City of New York*, 315 F. Supp. 2d 461 (S.D.N.Y. 2004); *City of New York v. Job-Lot Push Cart*, 88 N.Y.2d 163, 666 N.E.2d 537, 643 N.Y.S.2d 944 (1996); and *Richmond Boro Gun Club, Inc. v. City of New York*, 896 F. Supp. 276 (1995), only involved issues of federal due process law, and therefore did not address New York state law on prohibition versus regulation. In *People v. Ortiz*, 125 Misc.2d 318, 479 N.Y.S.2d 613 (1984), the issue was framed as whether New York City could "validly ban . . . the possession of knives with a blade length of four inches or greater . . ." 125 Misc.2d at 318. But this ordinance

---

[4] In fact, the City's argument provides further reasons why the Bat Ordinance is not justifiable either scientifically or logically. The City emphasizes as a virtue the fact that the Bat Ordinance does not apply to practice games by high schools or non-high school games, such as the many amateur leagues in which high school players participate. City Memo at 18. But if the bats were truly unsafe, what is gained by allowing them to be used in these other venues? This is simply another illustration of the complete irrationality of an ordinance that was adopted only to pander to sensationalism and without an ounce of serious thought.

6

amounted to a regulation, not a prohibition, of the knives. This means of regulation is similar to the current regulation of metal bats that restricts their diameter and length to weight ratios. Therefore, it does not support the City's argument that a prohibition far broader than this kind of restriction is appropriate here. Moreover, *Oritz, supra*, makes clear that "the means employed" must be "appropriate and reasonably necessary for accomplishment of the purpose" and also must not be "unduly oppressive." Thus, this case supports the contention that when regulation can suffice, a complete prohibition is unwarranted.

The City also incorrectly alleges that Plaintiffs' cases on prohibition involve "local laws that prohibited conduct in specific policy areas that the state legislature made clear could be regulated, but not prohibited." City Memo at 19. There is no truth to this contention. The City fails to address *People v. Bunis*, 9 N.Y.2d 1, 172 N.E.2d 273, 210 N.Y.S.2d 505 (1961); and *People v. Federico*, 96 Misc.2d 60, 409 N.Y.S.2d 177 (1978), quoted extensively by Plaintiffs' Initial Brief at 11.

Contrary to the City's contention, in *Good Humor Corp. v. City of New York*, the city relied on legislation that gave it the authority to "adopt and amend local laws in relation to the acquisition, care, management and use of its streets and property." 264 A.D. 620, 624, 36 N.Y.S.2d 85 (1942). Nowhere do those statutes permit only regulation, or expressly limit the authority to prohibit. *S.C. Nichols Herkimer Corp. v. Village of Herkimer*, 34 A.D.2d 371 (1971); *Peace v. McAdoo*, 110 A.D. 13 (1905); and *Koston v. Town of Newburgh*, 45 Misc.2d 382 (1965), all interpreted statutes that permitted regulation, but did not expressly state that prohibition was not authorized.

Perhaps most importantly, the City but ignores the fact that *in this case*, the relevant portion of the police power statute claimed to authorize the Bat Ordinance "made clear [conduct]

7

could be regulated," and, like the statutes at issue in *Nichols Herkimer*, *Peace* and *Kotson*, did

not expressly authorize prohibition. *Id.* The Legislature has provided that New York City has

the specific power:

> To maintain order, enforce the laws, protect property and preserve and care for
> the safety, health, comfort and general welfare of the inhabitants of the city and
> visitors thereto; and for any of said purposes to ***regulate*** and license occupations
> and businesses.

General City law, Article 2-A, § 20(13) (emphasis added). Simply put, if the City's argument is

valid, the Bat Ordinance is not.[5]

Of course, the requirement that regulation be impractical for prohibition to be lawful is

not dramatically different from the general application of New York police power or due process

requirements to an ordinance's prohibition. That is because in order for legislation to be valid,

there "must be a reasonable relationship between [the] menace and the remedy proposed."

*Louhal Props., Inc. v. Strada*, 191 Misc. 2d 746, 755, 743 N.Y.S.2d 810 (N.Y. Sup. Ct. 2002)

(overturning legislation that prohibited a convenience store from operating between 11 p.m. and

6 a.m.). "[W]here the remedy proposed is 'unduly oppressive' [as here] it will not be upheld."

*Id.*

The same conclusion was reached in *Defiance Milk Products Co. v. Du Mond*, 309 N.Y.

537, 132 N.E.2d 829 (1956). In *Defiance*, the Court of Appeals overturned a law that banned the

sale of evaporated skim milk in household size containers. The Court said that because the issue

the legislature was concerned with, customer confusion, could have been dealt with through

regulation, "prohibition was, as a matter of law, not a reasonable way of dealing with such

confusion." 309 N.Y. at 541. *See also* cases cited in Plaintiffs' Initial Brief at 11.

---

[5] Additionally, the cases cited by the City where prohibitions were upheld did not involve any
claim by the Plaintiff that prohibition was improper under New York law because the regulation
was not impractical.

The City only offers one (incorrect) argument that regulation is impractical. It argues that "a regulation based solely on exit speed," City Memo at 5, will not suffice, because non-wood bats have larger "sweet spots" – and therefore result in more "good hits" of the sort that also occur, albeit less frequently, off wood bats. This argument is irrelevant for three reasons. First, again, it relates at most to batted ball speed, not safety. Second, it is an argument that has never been seriously made even by opponents of non-wood bats, and for good reason. If it is necessary to prevent safety risks to reduce the number of hits that occur at exit speeds that also occur off wood bats, that means that wood bats themselves are unreasonably dangerous. No one has ever argued that. Moreover, if more offense in baseball is inherently dangerous, then baseball itself should be prohibited. Perhaps whiffle bats should be required, or the game should be reduced to bunts.

Third, this argument doesn't address whether regulation is adequate if it is *not* limited to exit speed. Since the City cannot dispute Plaintiffs' evidence, Chauvin Second Decl. at ¶¶ 2-3; Chou Second Decl. at ¶ 4, that the sweet spots that have been engineered in the metal bats could be engineered out, and therefore can be regulated, this argument at most calls for regulation of the sweet spot, not the prohibition of all non-wood bats. The City has offered no argument that metal or non-wood composite bats are *inherently* more effective than wood bats, much less inherently more dangerous than wood bats. There is no basis for a sweeping prohibition of non-wood bats.

## IV.    THE BAT ORDINANCE INVOLVES UNLAWFUL DELEGATION OF A LEGISLATIVE FUNCTION TO A PRIVATE PARTY

### A.    The City's Arguments On Delegation Are Incorrect

#### 1.    The Nature Of The Delegation

DETROIT.2670854.36

The City's defense of its delegation of legislative responsibility to Major League Baseball misses the point and misstates the case law. First, the City mischaracterizes what it did, claiming that the Council "merely referred the testing and selection of wood composite bats to MLB within prescribed boundaries, namely that the baseball bats be made of wood composite material, and they contain no metal, in whole or in part." City Memo at 12-13. But the Bat Ordinance effects a broad legislative delegation, not a mere delegation of administrative action.

As the undisputed evidence presented by Plaintiffs has demonstrated, composite bats can vary widely in their exit speed, weight and composition. See Chou Decl. at ¶ 8, Chauvin Decl. at ¶ 11. None of these characteristics are specified in the Bat Ordinance. Therefore, consistent with this broad delegation, Major League Baseball could permit the "hottest" possible composite bat with an (irrelevant) wood veneer, or only permit bats so dead that they cannot hit the ball out of the infield. Those standards (however they vary) would then become the law of the City of New York, simply by virtue of Major League Baseball's discretionary actions.

This broad discretion can only be viewed as legislative in nature. The Bat Ordinance provides that wood composite bats "which [are] approved by Major League Baseball, pursuant to *such organization's official rules...*" will be permitted (emphasis added). Thus, the Bat Ordinance specifically states that Major League Baseball shall *make the rules.* That is a quintessential legislative function. For example in *People v. Mobil Oil Corp.,* 422 N.Y.S.2d 589, 101 Misc. 2d 882 (N.Y. Dist. Ct. 1979), a delegation that allowed the National Fire Protection Association to establish "*rules*" which "shall be deemed a part of the ordinance" was found to be an unlawful delegation. 422 N.Y.S.2d at 592 (emphasis added). (The key to the court's decision was that the ordinance adopted the Association's "rules and standards, as amended," indicating that the Association could change the rules as it chose). The court concluded from these facts

10

that the ordinance "delegates the power to make law, involving the discretion of what can or cannot be done." *Id.* That is exactly what is occurring here.

In contrast, the City relies on a series of cases involving activities by private parties, which, with one exception, did not even discuss the issue of non-delegation. In that one exception, *Amsterdam v. Helsby*, 37 N.Y.2d 19, 332 N.E.2d 290, 371 N.Y.S.2d 404 (1975), there was some debate as to whether the party involved was truly private.[6] But in any event, that party was permitted to act, not under rules it established, but instead under an excruciatingly detailed series of standards previously promulgated by the statute.[7] This case could not be more different.

Moreover, the City's argument is based entirely on a factually unsupported and even bizarre assertion: "The City Council has set the standard that really matters – no metal, in whole or in part." City Memo at 15. The City argues (without the slightest shred of logical factual or

---

[6] The issue was only discussed in the concurrence. The Court's opinion never discussed whether a private party was involved.

[7] Civil Service Law, § 209, subd 4(c)(v) requiring analysis of the following factors to make each determination:

> a. comparison of the wages, hours and conditions of employment of the employees involved in the arbitration proceeding with the wages, hours, and conditions of employment of other employees performing similar services or requiring similar skills under similar working conditions and with other employees generally in public and private employment in comparable communities.
>
> b. the interests and welfare of the public and the financial ability of the public employer to pay;
>
> c. comparison of peculiarities in regard to other trades or professions, including specifically, (1) hazards of employment; (2) physical qualifications; (3) educational qualifications; (4) mental qualifications; (5) job training and skills;
>
> d. the terms of collective agreements negotiated between the parties in the past providing for compensation and fringe benefits, including, but not limited to, the provisions for salary, insurance and retirement benefits, medical and hospitalization benefits, paid time off and job security.

legal support) that "what really matters" is that not a trace of an evil element like metal be allowed in a bat.  Apparently, the principles of twelfth century alchemy have returned to favor, at least within the confines of the City Council.

Of course, this argument cannot be sustained, no matter how light the City's burden. Moreover, it contradicts the logic of the Bat Ordinance itself, which also prohibits non-wood composite bats, themselves not containing any amount of metal.

The argument is also completely inconsistent with the City's other argument, that non-wood bats are allegedly unsafe because of the exit speed off the bat and the moment of inertia of non-wood bats. See Popa Decl. at ¶¶ 19, 21-23.  Major League Baseball is given complete discretion as to how to set these (supposedly critical) parameters.

Finally, of course, "what really matters" is irrelevant.  Major League Baseball, a private party, has been given the authority within broad parameters to make the rules governing which wood composite bats may be used in high school play in New York City.  That is unlawful.  The delegation of legislative power to "a private corporation is such an abdication as to be patently an unconstitutional relinquishment of legislative power in violation of section 1 of article III of the Constitution of this State." *Fink v. Cole*, 302 N.Y. 216, 225, 97 N.E.2d 873 (1951).  See also Plaintiffs' Initial Brief at 6-7.

### 2.    **Major League Baseball's Motivation**

Second, the City suggests (without any legal support) that the normal rules against delegation should not apply where Major League Baseball will not "exercise selfish or arbitrary motivations or whims . . ."  But there is no such exception to the absolute rule against delegation set forth in *Fink, supra,* and the City does not offer one.

The argument also fails factually.  The relevant policy question would be whether Major League Baseball's goals (however appropriate for its needs) are those of the City of New York.

12

As explained in Plaintiffs' Initial Brief at 14, Major League Baseball's goals are to simulate Major League play, including, for example, causing bats to break (and potentially cause injury) if hit too close to the handle. The City does not dispute the obvious conclusion that these goals are not consistent with the goals of the City, since broken bats can create a safety risk. Cruz Decl. at ¶ 4 (describing how a broken bat split his son's hand open and gave his son a two inch gash). Chauvin Second Decl. at ¶ 17, Ex. O thereto. As long as Major League Baseball's goals are different from those of the City, the evils of private delegation are obvious.[8]

Indeed, the language of Major League Baseball's current protocol, discussed in Plaintiffs' Initial Brief at 14, makes clear how Major League Baseball's approach may in its discretion vary from what the City Council desires. The current Major League Baseball protocol adopts the exact test (which the City mischaracterizes as a 97 mph test) currently utilized by the NCAA and National Federation of High Schools, a test which the City devotes great effort to criticizing in its materials supporting its memorandum. See Declaration of Laura Popa at ¶¶ 15-18; Chauvin Decl. at ¶ 14, Ex. A to Chauvin Decl. Apparently, Major League Baseball and the City are at odds in their current views of how to regulate bats. Nevertheless, under the Bat Ordinance, Major League Baseball's views will prevail as to wood composite bats, even if those views are antithetical to the position of the City generally. That is irrational, itself a violation of equal protection, and an illustration of how the Bat Ordinance will allow a private party to make legislative policy.

---

[8] There is no evidence in the record that Major League Baseball has even been contacted regarding its role under the Bat Ordinance, and certainly no evidence that Major League Baseball has agreed to do anything in recognition of this role that would advance the City's purposes.

13

### 3.     The City's Case Law Is Irrelevant

Third, the other cases cited by the City on delegation are all irrelevant to the issue before the Court. Many of the cases cited by Defendant concern the delegation of power to an *administrative agency* of the *executive department* and not private parties. *Levine v. Whalen*, 39 N.Y.2d 510, 515 (1976) (analyzing the delegation of authority to the State Commissioner of Health); *Citizens for a Safer Community v. City of Rochester*, 164 Misc. 2d 822, 836-37 (N.Y. Sup. 1994) (allowing the delegation of authority to the police commissioner); *Utica v. Water Pollution Control Board*, 5 N.Y.2d 164, 169 (1959) (analyzing the delegation of authority to the Water Pollution Control Board). Of course, in this situation, an entirely different standard applies.[9]

The City also relies on cases where there was no delegation to a private body, but instead adoption of a specific standard that happened to be created by a private body.[10] But that is not at all what the Bat Ordinance does. It permits any wood composite bat "which is approved by Major League Baseball, pursuant to such organization's official rules, for major or minor league baseball play . . ." The Bat Ordinance does *not* say that it incorporates Major League Baseball's *current* rules, or that if Major League Baseball changes its rules, those rules would not govern.

---

[9] Defendants have also improperly cited cases that address the appointment to government administrative boards of people who remain involved in industry. *8200 Realty Corp. v. Lindsay*, 27 N.Y.2d 124, 131 (1970) (upholding the appointment of various industry parties to an agency "as long as government keeps the ultimate controls in its own hands.").

[10] *Syracuse v. Penny*, 59 Misc. 2d 818 (N.Y. Sup. Ct. 1969) (allowing the adoption of the current National Electric Code); *North American Safety Valve Industries, Inc. v. Wolgast*, 672 F. Supp. 488 (D. Kan. 1987) (allowing adoption of portions of the 1983 ASME Boiler and Pressure Vessel Code and the 1983 edition of the National Board Inspection Code); *Royal Insurance Co. of America v. Ru-Val Electric Corp.*, 918 F. Supp. 647 (E.D.N.Y. 1996) (discussing private standards influence on legislation); *Towne Construction Co. v. Occupational Safety & Health Review Comm'n*, 847 F.2d 1187, 1190 (6th Cir. 1988) (adopting the "Power Crane and Shovel Mobile Hydraulic Crane Standard No. 2" as part of OSHA's regulations).

14

## B.    Severance Is Improper Here

The City's alternative argument, that the delegation to Major League Baseball should be severed from the Bat Ordinance and stricken, makes even less sense. In this case, severance would be completely unlawful, for a simple reason. The delegation of regulatory responsibility to Major League Baseball is an exception to the overall prohibition against non-wood bats. If this provision were stricken from the Bat Ordinance in the manner desired by City Memo at 19-20, the result would be that the wood composite bats to be regulated by Major League Baseball would now also be prohibited. Thus, this Court, by its actions, would be actually broadening the prohibition of the Bat Ordinance beyond what was enacted by the City Council. The Court does not have the authority to take such action.

The Supreme Court long ago made this clear, stating that "[w]here an excepting provision in a statute is found unconstitutional, courts very generally hold that this does not work an enlargement of the scope or operation of other provisions with which that provision was enacted, and which it was intended to qualify or restrain." *Davis v. Wallace*, 257 U.S. 478, 484 (1922). In fact, the Supreme Court made clear that courts are without power to rewrite the statutes in such situations. "Only with that restricted meaning did they receive the legislative sanction which was essential to make them part of the statute law of the State; and *no other authority is competent to give them a larger application.*" *Id.* at 485. (emphasis added).

Of course, other courts have agreed. "It is a cardinal rule of construction that where an excepting clause or restriction is found unconstitutional the substantive provisions it qualifies cannot stand." *U. T., Inc. v. Brown*, 457 F. Supp. 163, 170 (W.D.N.C. 1978) (internal citations omitted). *See also, Quinn v. Commissioner of Internal Revenue*, 524 F.2d 617, 626 (7th Cir. 1975) ("[W]hen a section of a statute is declared void, the statute cannot be given effect as though the legislature had not enacted the conditions limiting its operation."); *Espresso, Inc. v.*

15

*District of Columbia*, 884 F. Supp. 7, 12 (D.D.C. 1995) ("[B]ecause the District included exceptions to the ban into legislation itself the court cannot conclude that an outright ban was the legislative intent.").

Severance is also improper where it is unclear which provisions a legislative body would intend to be severed and whether the legislative body would intend an entirely new scheme to result. The difficulties are exemplified by the decision in *Boreali v. Axelrod*, 71 N.Y.2d 1, 14 (1987), where severance was rejected because:

> It would be pragmatically impossible as well as jurisprudentially unsound, for us to attempt to identify and excise particular provisions while leaving the remainder of the PHC's antismoking code intact, since the product of such an effort would be a regulatory scheme that neither the Legislature nor the PHC intended.

*Id.*

In this case, the problem would be even greater, since the Bat Ordinance's language itself is facially ambiguous on the effect of severance. Therefore, even if severance were proper, the Court would be unable to determine *how* to sever the provision.

The Bat Ordinance's definition of "wood bats," setting forth the scope of the prohibition, is as follows:

> 'Wood bat' shall mean any baseball bat constructed exclusively of wood or any wood laminated or wood composite bat, which is approved by major league baseball, pursuant to such organization's official rules, for major league or minor league baseball play; provided that such term shall not include any bat made in whole or in part of metal, including, but not limited to, aluminum, magnesium, scandium, titanium or any other alloy compound.

There are two (diametrically opposite) ways to sever and eliminate the unlawful delegation to Major League Baseball in this clause:

1.    The Court could eliminate the words "which is approved by Major League Baseball, pursuant to such organization's official rules, for Major League or Minor League Baseball play . . ." The net effect of this severance would mean

16

that permitted "wood bats" would include wood, wood laminated, and wood composite bats, without any regulation thereof. The effect of such a severance would be to expand the scope of permitted bats under the Bat Ordinance.

2.  Alternatively, the Court could strike the language noted above, *plus* the words "wood composite bat" immediately preceding that language. The effect of such a severance (suggested by the City's Memo) would be exactly the opposite, to prohibit all wood composite bats, including those sold by the Plaintiff manufacturers, and to further limit the options of New York City players and coaches. This would violate the legal principles discussed above.

There is no basis on which the Court could choose between these alternatives.

In support of its position, the City offers only two arguments: the New York City Administrative Code contains a severability provision, and the proposed clause to be severed is allegedly incidental to the ordinance's main purpose. Neither can withstand scrutiny. First, contrary to the City's arguments, severability does *not* hinge on the presence or absence of a severability clause, since many courts have rejected severance even where such a clause was present. *See, e.g., New York State Superfund Coalition, Inc. v. New York State Dep't of Environmental Conservation*, 75 N.Y.2d 88, 94 (1989) (reasoning that the objectionable sections were not severable from entire statute despite presence of a severability clause).[11]

---

[11] Nor is there a presumption of severability. The City agrees that *People ex rel. Alpha Portland Cement Co. v. Knapp*, 230 N.Y. 48, 60 (1920) sets forth the governing standard. City Memo at 20. Contrary to the City's implication, however, "[n]owhere in Judge Cardozo's opinion quoted above can there be found a presumption of severability." *Allen v. City of Buffalo*, 143 Misc. 2d 1054, 1058, 541 N.Y.S. 876 (1991). Indeed, "there appears to be no formal presumption under New York that "the legislature would prefer the portion remaining after partial invalidation to continue in effect." *Ass'n of Surrogates & Supreme Court Reporters v. New York*, 778 F. Supp. 210, 212 (S.D.N.Y. 1991), quoting *Doyle v. Suffolk County*, 786 F.2d 523, 528 (2d Cir. 1986).

17

Second, the notion that this provision is "incidental" deserves little attention. It is certainly not incidental to those manufacturers who might wish to sell their wood composite bats in New York City. It is not incidental to players and coaches, who might look for an alternative which might or might not be adequate to replace costly wood bats. If there *were* a safety concern here, it would not be incidental to that, since the undisputed facts show that a non-wood composite bat with an irrelevant wood veneer will perform just like the non-wood composite bats which are prohibited under the Bat Ordinance. There is simply no way to rationally sever the Bat Ordinance.[12]

## V.    THE BAT ORDINANCE IMPERMISSIBLY BURDENS INTERSTATE COMMERCE

The City's defense of the Bat Ordinance on interstate commerce grounds ignores both the facts and the law. First, the City claims that the only harm to interstate travel involves New York City baseball players. City Memo at 12. However, as Plaintiffs' Initial Brief and declarations explained, the effect of banning non-wood bats in New York City play will be to impose costs on New York City players seeking to play games outside of the City, as well as on players from other states seeking to play games in New York City. Plaintiffs' Initial Brief at 16. *Both* will have to either buy two sets of bats or forego interstate games. *Id.* Therefore, obviously, both will be injured.

In any event, the balancing test under *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970), relied on by Plaintiffs,[13] not only protects out of state residents, but also interstate activity by residents of the regulated jurisdiction. In fact, *Pike* itself overturned an Arizona

---

[12] The City's "evidence" that this was an "incidental concern" to the City Council is a reference to two comments by witnesses at hearings. *See* City Memorandum at 20. That certainly is not evidence of legislative intent.

[13] *See* Plaintiffs' Initial Brief at 17, citing *Association of International Auto Manufacturers Inc. v. Abrams*, 84 F.3d 602, 612 (2d Cir. 1996), which relies on *Pike*.

18

statute for impermissibly burdening an Arizona business by regulating its interstate activity. 397 U.S. at 848-49.

The City then miscites *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 127 S. Ct. 1786, 1793 & 1797 (2007), City Memo at 9-10, claiming that matters of local interest are not subject to interstate commerce clause scrutiny. Commerce Clause cases are subjected to two levels of scrutiny. One is the *per se* standard, and the other is the *Pike* balancing test. Plaintiffs have never claimed that this statute falls into the *per se* category. But the City's (incorrect) argument that the Bat Ordinance relates only to local interests is relevant only to *United Haulers'* discussion as to why per se condemnation was not appropriate. *Id.* at 1796. That discussion did not relate in any way to the *Pike* balancing test on which Plaintiffs have relied. Indeed, *United Haulers* specifically stated that the *Pike* balancing test "is reserved for laws directed to legitimate *local concerns*, with effects upon interstate commerce are only incidental." *Id.* at 1797 (emphasis added).

The City also quotes the Second Circuit decision in *United Haulers*, stating that the burden must be "qualitatively or quantitatively different from that imposed on intrastate commerce." 483 F.3d 150, 156 (2d Cir. 2006). The City fails to state that the very next sentence explains that this test may be met in three ways: "[t]o this point, we have recognized three instances in which a non-discriminatory state or local regulation may impose a differential burden on interstate commerce: . . . (3) when the challenged statute imposes a regulatory requirement inconsistent with those of other states." 438 F.3d 156-57. This third test is the "inconsistent regulation" standard on which Plaintiffs have relied, *see* Plaintiffs' Initial Brief at 16, and which the City completely ignores.

19

There is thus no legal answer to Plaintiffs' contention: when a law imposes inconsistent regulations that cause an undue burden on interstate commerce, it is unconstitutional. Plaintiffs' Initial Brief at 16. Plaintiffs have presented significant, unrebutted evidence of the burden on interstate commerce here under the *Pike* test, and of the lack of any justification for that burden. The City has no factual response on the first point. (In fact, it fails to even purport to present any evidence in response to Plaintiffs' Statements of Undisputed Fact on these issues, *see* City Responses to Statements, 26-29.) On the second, it merely asserts conclusorily, without any analysis or support, that the benefits from the Bat Ordinance outweigh this restraint on interstate commerce and that summary judgment is therefore appropriate. City Memo at 12.

It is understandable why the City's argument is not more specific, since the "evidence" cited by the City to support the Bat Ordinance is a pastiche of irrelevancies and anecdotes. *See* discussion, *supra*. It takes far less than "rigorous scrutiny," *cf. United Haulers, supra*, 127 S. Ct. at 1795-96, to discern the lack of any benefit from the Bat Ordinance. The City has offered absolutely no scientific support for the conclusion that metal bats have increased safety risks in baseball. And "rational speculation" is certainly insufficient under the *Pike* balancing test.

Plaintiffs believe that in the absence of any evidence of a safety problem, they deserve summary judgment on the interstate commerce issue as a matter of law. But at a minimum, Plaintiffs have presented more than sufficient evidence to create disputed issues of fact that must be tried on this issue. *See* Plaintiffs' Initial Brief at 16-19.

## VI.    THE BAT ORDINANCE VIOLATES EQUAL PROTECTION AND FEDERAL DUE PROCESS STANDARDS

Even under the extremely lenient equal protection and federal due process standards argued by Defendant, the Bat Ordinance cannot be justified, and the City does not do so. Plaintiffs pointed out, for example, that the difference between a wood composite and non-wood

composite bat can be nothing more than a functionally irrelevant wood veneer. The City does not present any evidence or even argument that there is any inherent difference in performance between wood composite and non-wood composite bats that would make regulation sufficient in one case and prohibition necessary in the other.

In fact, the "evidence" supplied by the City in support of its assertions regarding wood composite bats is so utterly irrelevant to the question as to itself demonstrate the irrationality of the Bat Ordinance. The document, Exhibit D-25, is a 15-year old study comparing performance of unknown examples of metal, wood and composite bats. It is not even clear from the study whether the particular composite bat in question was a wood or non-wood composite. If this is the best evidence possessed by the City Council that wood composite bats as a group perform more closely to wood bats than metal or non-wood composite bats and that regulation is practical for one group of bats but not the others, and justify distinct treatment under the Bat Ordinance, then there is no possible way to sustain the City's position.[14]

In fact, the legislative record conclusively demonstrates that the City is wrong on this issue. See NYC 0000874-888, a business plan for the sale of a wood composite bat called the "High Performance Equalizer Rocket," a bat which "substantially outperforms aluminum. . . *Id.* at 875. (Chauvin Second Decl. at Ex. E, NYC0000878). While this is another bat that is not currently marketed, this establishes that wood composite bats are capable of outhitting metal

---

[14] The only other evidence cited is a casual statement by a former baseball player that with the "Bom [sic] bat," "you have to earn it." *See* Ex. D16 at 111-116. (The Baum bat is one model of wood composite bats). This is hardly evidence of the quality or performance of wood composite bats as a class.

The City also argues that wood composite bats are more durable than wood, and so their use will reduce costs. But this is relevant only if wood composite bats are shown to be safer than other bats, such as metal and non-wood composite bats, which are also more durable than wood. Cruz Decl. at ¶ 6; Torres Decl. at ¶ 6; Navarro Decl. at ¶ 4. Given the absence of any evidence of the greater safety of wood composite bats as a group, this assertion cannot save the City's position.

21

bats, depending on the specifics of their composition. There is simply no principled basis on which to conclude that one kind of bat may be regulated and the others must be prohibited.

The City thus fails to even meet the "rational speculation" test. The City has not yet articulated even a theory under which one could assert that wood composite bats as a group are safer or more susceptible to regulation than metal or non-wood composite bats. Therefore, this is the rare and compelling case where the equal protection clause is violated.

The City is then left with the chestnut that "the Council had to draw the line somewhere . . ." City Memo at 7, misciting *FCC v. Beach Communications*, 508 U.S. 307 (1993). But *Beach* stated only that the legislature "must be allowed leeway to approach a perceived problem incrementally." *Beach*, 508 U.S. at 316. That is not what happened here. It is not the case that the City Council decided to prohibit metal bats, but had not reached a decision on wood composite or wood bats. The Council affirmatively decided to ban metal and non-wood composite bats, to regulate wood-composite bats, and to fully permit wood bats. The applicable standard should follow *Levy v. Louisiana*, 391 U.S. 68, 71 (1968) (stating that "though the [Equal Protection Clause] test has been variously stated, the end result is whether the line drawn is a rational one."). On those facts, the answer to that question is "no."

## VII.    PLAINTIFFS ARE ENTITLED TO A PRELIMINARY INJUNCTION

The City's argument that enforcement of the ordinance will not cause irreparable harm to Plaintiffs is contrary to their own case law, and is contradicted by the evidence. City Memo at 21-25.

First, the cases that the City claims show that impeded proposition that participation in athletics does not constitute irreparable harm, in fact, say the exact opposite. The City asserts that in *Kampmeier v. Nyquist*, 553 F.2d 296, 300 (2d Cir. 1977), there was "no irreparable harm." City Memo at 23. This is an odd interpretation of the court's specific holding that "both

22

sides have demonstrated the possibility of irreparable injury . . . athletics play an important part in the life and growth of teenage children." *Kampmeier*, 553 F.2d at 300.  Similarly, the court in *O'Connor v. Board of Education,* 645 F.2d 578 (7th Cir. 1981) did not find "no irreparable harm" from denial to a female student of an opportunity to try out for a boy's basketball team, but, rather, held only that it was not "such a strong showing . . . that we might overlook the serious deficiencies of her case on the merits." *Id.* at 582.  Indeed, the court in *O'Conner* specifically noted that it did not "denigrate the potential harm to [Plaintiff]" . . . but did "not believe it justifies turning aside years of settled Supreme Court law." *Id.* at 583.

The City misstates its first argument centers on its irrelevant assertion that at least a few players and coaches "place a premium value on the competitiveness, tradition, pure skill and enjoyment of playing baseball with a wood bat." City Memo at 22.  Of course, there may well be a few players who prefer playing with wood bats.  In every other jurisdiction but New York City, players, coaches, and leagues are free to make this decision for themselves.  *See* Seiler Decl. at ¶ 8; Davini Decl. at ¶ 8.  The undisputed facts establish that when given the choice, over 99% of players and leagues will choose to play with metal and non-wood composite bats, including the Plaintiffs in this case who are being forced to purchase such expensive wood bats they do not desire to use.  Seiler Decl. at ¶ 10, Zitter Decl. at ¶ 11.  Indeed, USA Baseball, an umbrella organization for hundreds, if not thousands of local leagues, has strongly opposed this ban as have the Catholic High School Athletic Association and Public School Association League, representing the vast majority of all high school baseball players in New York.[15]  *See*

---

[15] The fact that allegedly "several" leagues have switched to wood bats successfully does not change the fact that hundreds, if not thousands, of local leagues across the United States have chosen not to do so because they believe this would not be good for their game.  Seiler Decl. at ¶¶ 2, 6.

23

*generally*, Seiler Decl. at ¶¶ 2, 6; Chauvin Second Decl. at ¶ 18; Exs. P and Q to Chauvin Second Decl.

The City's second argument, that the bat companies "do not allege that the City *intended* to injure their reputation or goodwill," City Memo at 24, (emphasis added), is irrelevant to whether or not this injury in fact took place. Indeed, media outlets across the country have grabbed onto the sensationalistic nature of the City Council's actions, and have printed numerous articles questioning the safety of metal and non-wood bats. Chauvin Second Decl. at ¶ 23. There can be no serious argument that such publicity does not negatively affect the bat companies.[16]

Finally, the City dismisses the evidence that New York City players, coaches and programs will have to purchase many wood bats at $50-60 per bat in order to get through a season as a "de minimis expense." City Memo at 21. Hundreds of dollars a year is by no means "de minimis" to the many economically disadvantaged players and families in the City of New York. *See* Torres Decl. at ¶ 6.[17] Forcing parents and coaches to undergo this expense or forego the opportunity to play a game they love is unquestionably irreparable harm. Injunctive relief is both appropriate and necessary here.

## VIII.  CONCLUSION

For the reasons stated above, Plaintiffs' deny Defendant's Cross Motion for Summary Judgment and enter judgment in favor of Plaintiffs on all counts.

---

[16] The City's argument that the bat companies advertise the "power" of their bats merits little discussion. These advertisements do not in any way suggest that these bats are unsafe.

[17] The City's arguments concerning the lost scholarship opportunities fares no better. The City can only point to vague statements by coaches in North Dakota, while coaches right here in New York City that have experienced years of success of placing economically disadvantaged New York skilled children into college scholarships testify adamantly that this will harm their opportunities. *See* Zitter Decl. at ¶ 9; Canale Decl. at ¶ 6.

Dated: New York, New York
    June 29, 2007

 

HONIGMAN MILLER SCHWARTZ
& COHN LLP

By: _____
    David A. Ettinger (P26537)
    Jeffrey H. Kuras (P66036)
    A Member of the Firm
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226
(313) 465-7368


DEWEY BALLANTINE LLP


    John F. Collins (JC-9324)
    A Member of the Firm
1301 Avenue of the Americas
New York, New York 10019
(212) 259-8000

Attorneys for Plaintiffs


TO:    Jerald Horowitz (JH8395)
    Assistant Corporation Counsel
    The City of New York
    Law Department
    100 Church Street, Room 5-189
    New York, NY 10007

    Attorney for Defendant

25