Index No. No. 07 CV 3605 (JGK) (DFE)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USA BASEBALL, THE NATIONAL HIGH
SCHOOL BASEBALL COACHES ASSOCIATION,
DR. PETER BERG, JUAN HERNANDEZ, DENNIS
CANALE, MEL ZITTER, MICHAEL CRUZ, TIT0
NAVARRO, JOHN TORRES, EASTON SPORTS,
INC., WILSON SPORTING GOODS CO.,
RAWLINGS SPORTING GOODS COMPANY, and
HILLERICH & BRADSBY CO.,

                                                        Plaintiffs,

-against-

THE CITY OF NEW YORK,

                                                        Defendant.

## DEFENDANT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND A PRELIMINARY INJUNCTION

**MICHAEL A. CARDOZO**
*Corporation Counsel of the City of New York*

*Attorney for Defendant*
*100 Church Street, 5-189*
*New York, N.Y. 10007*

*Of Counsel: Jerald Horowitz*
*Tel: (212) 442-0589*
*LM No.2007-015516*

GABRIEL TAUSSIG,
JERALD HOROWITZ,
        Of Counsel

LAUREN G. AXELROD,
ALVIN L. BRAGG, JR.,
LAURA J. POPA,
        On the Memorandum.

July 6, 2007

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT ............................................................................ 1

ARGUMENT ......................................................................................................... 1

POINT I

    PLAINTIFFS' CONSTITUTIONAL CLAIMS
    FAIL AS A MATTER OF LAW. .................................................................. 1

POINT II

    LOCAL LAW 20 IS A PROPER EXERCISE OF
    LEGISLATIVE AUTHORITY. ...................................................................... 4

POINT III

    PRELIMINARY INJUNCTIVE RELIEF SHOULD
    BE DENIED TO PLAINTIFFS. .................................................................... 8

CONCLUSION ...................................................................................................... 10

## TABLE OF AUTHORITIES

<u>Cases</u>                                                                                                      <u>Pages</u>

Allen v. City of Buffalo,
    143 Misc. 2d 1054 (Sup. Ct. Erie Co. 1989)................................................................7 n10

Allen v. City of Buffalo,
    163 A.D.2d 822 (4th Dep't 1990).................................................................................7 n10

Alliance of American Insurers v. Chu,
    77 N.Y.2d 573 (1991)..................................................................................................6 n8

Beatie v. City of New York,
    123 F.3d 707 (2d Cir. 1997)...........................................................................................1

Biener v. Calio,
    361 F.3d 206 (3d Cir.),
    cert. denied, 543 U.S. 817 (2004) ..................................................................................7

Big Apple Food Vendors' Association v. Street Vendor Review,
    90 N.Y.2d 402 (1974) ...................................................................................................5

Boreali v. Axelrod,
    71 N.Y.2d 1 (1987) .......................................................................................................7

Catanzaro v. City of Buffalo,
    163 A.D.2d 822 (4th Dept. 1990) .............................................................................7 n10

Cellular Telephone C. v. Village of Tarrytown,
    209 A.D.2d 57 (2d Dep't 1995) ..................................................................................3 n3

City of New York v. Job-Lot Push Cart,
    88 N.Y.2d 163 (1996) ...................................................................................................5

Davis v. Wallace,
    257 U.S. 478 (1922)...................................................................................................7 n10

Defiance Milk Products Company v. Du Mond,
    309 N.Y. 537 (1956) .................................................................................................3 n3

FCC v. Beach Communications, Inc.,
    508 U.S. 307 (1993).................................................................................................1, 3

Francarl Realty Corp. v. Town of E. Hampton,
    2006 U.S. Dist. LEXIS 95918 (E.D.N.Y.)....................................................................5

**Cases**                                                                                           **Pages**

General Electric Co. v. New York State Department of Labor,
   936 F.2d 1448 (2d Cir. 1991)....................................................................................6

Hernandez v. Robles,
   7 N.Y.3d 338 (2006) ..............................................................................................3

Kampmeier v. Nyquist,
   553 F.2d 296 (2d Cir. 1977)....................................................................................9

Leavitt v. Jane L.,
   518 U.S. 137 (1996).................................................................................................7

Levy v. Louisiana,
   391 U.S. 68 (1968)...............................................................................................2 n1

Louhal Properties, Inc. v. Strada,
   191 Misc. 2d 746 (Sup. Ct. Nassau Co. 2002)......................................................3 n3

National Ass'n of Indep. Insurers v. State,
   89 N.Y.2d 950 (1997) ...........................................................................................6 n8

National Electrical Manufacturers Associate v. Sorrell,
   272 F.3d 104 (2d Cir. 2001)....................................................................................3

New York City C.L.A.S.H. v. City of New York,
   315 F. Supp. 2d 461 (S.D.N.Y. 2004).....................................................................4

O'Connor v. Board of Education,
   645 F.2d 578 (7th Cir. 1981) ...................................................................................9

People ex rel. Alpha Portland Cement Co. v. Knapp,
   230 N.Y. 48 (1920)...............................................................................................7 n10

People v. Bunis,
   9 N.Y.2d 1 (1961) ..................................................................................................3 n3

People v. Federico,
   96 Misc. 2d 60 (2d Dep't 1978)..............................................................................3 n3

People v. Mobil Oil Corp.,
   101 Misc. 2d 882 (Dist. Ct. Crim. Part Nassau Co. 1979)......................................6

People v. Ortiz,
   125 Misc. 2d 318 (Crim. Ct. Bronx Co. 1984) .....................................................5 n5

| Cases | Pages |
|---|---|

People v. Shore Realty Corp.,
    127 Misc. 2d 419 (1st Dist. Ct. Nassau Co. 1984)....................................................6

Pharmaceutical Manuf. Associate v. Whalen,
    54 N.Y.2d 486 (1981) ...........................................................................................1

Price v. New York City Board of Education,
    2007 N.Y. Misc. LEXIS 3775 ( Sup. Ct. NY Co. May 7, 2007)...............................3

Town of Islip v. Caviglia,
    141 A.D.2d 148 (2d Dep't 1988),
    aff'd, 73 N.Y.2d 544 (1989) ...................................................................................8

Trio Distributor Corp. v. City of Albany,
    2 N.Y.2d 690 (1957)..........................................................................................2 n1

U.T., Inc. v. Brown,
    457 F. Supp. 163 (W.D.N.C. 1978) ...................................................................7 n10

**Statutes**

Fed. R. Civ. P. Rule 56(c)....................................................................................................1

Local Law 20 of 2007 ............................................................................................... *passim*

N.Y. Const. art. IX, § 2(c).................................................................................................5

N.Y. General City Law § 20(13) ........................................................................................5

N.Y. Mun. Home Rule Law § 10(1) ...................................................................................5

## PRELIMINARY STATEMENT

Defendant, the City of New York (the "City"), respectfully submits this reply memorandum of law in support of its motion for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure on all of plaintiffs' claims, and in opposition to plaintiffs' motion for a preliminary injunction and summary judgment.

Plaintiffs challenge on federal constitutional and other grounds the enactment of Local Law 20 of 2007, which regulates the types of baseball bats that may be used in competitive high school baseball games in the City. Defendant's opening brief sets forth numerous grounds for summary judgment to be granted in its favor. Despite plaintiffs' latest effort to dress or prop them up, their claims still fail as a matter of law.

## ARGUMENT

### POINT I

### PLAINTIFFS' CONSTITUTIONAL CLAIMS FAIL AS A MATTER OF LAW.

Plaintiffs fail to come to grips with the painfully adverse precedent of a long line of cases, including FCC v. Beach Communications, Inc., 508 U.S. 307, 313 (1993) and Beatie v. City of New York, 123 F.3d 707, 711 (2d Cir. 1997), and continue to improperly treat the deferential rationality test applicable to their due process and equal protection claims like the typical personal injury cases that have been brought against the bat manufacturers. Thus, plaintiffs assert an evidentiary burden (Pl. Reply Mem. at 1-5) where none is required to uphold the legislation. See FCC, 508 U.S. at 315; Beatie at 713; Pharmaceutical Manuf. Assoc. v. Whalen, 54 N.Y.2d 486, 493 (1981) (applying "familiar" rational basis test and not allowing "plaintiffs to relitigate, in the guise of a constitutional challenge, the very same factual determination made by the Legislature").

Further, ignoring the City Council's findings of death and serious injury associated with the use of non-wood bats, plaintiffs mischaracterize (Pl. Reply Mem. at 3, n2) calculations of ball speed and reaction time as the "centerpiece of its [the City's] justification." On the contrary, the City relies on common sense that non-wood bats that "are optimized to deliver a knock-out blow," and have seriously injured children, have no place in a City high school competitive baseball game.[1]  See Horowitz Decl., Ex. D3; Pl. Rule 56.1 Response ¶¶ 32, 50.   Plaintiff manufacturers counter that their advertisements are mere "hyperbole" and that the construction of non-wood bats "can be" regulated to make them act more wood-like.  See Pl. Rule 56.1 Response, ¶ 38; Second Declaration of Art Chou, dated June 27, 2007, ¶ 4.  The former raises issues of credibility (a problem the City Council encountered with any attempt to rely on the bat manufacturers' representations);[2] the latter is mere speculation.   Contrary to plaintiffs' assertion (Pl. Reply Mem. at 11-12), the sophisticated brand of "alchemy" currently employed in the construction of baseball bats today makes the elimination of metal a necessity. Plaintiffs acknowledge that NCAA-approved non-wood bats outperform wood bats, generally have lower moment-of-inertia, can be swung faster, and hit a greater percentage of balls with higher exit speeds. See Reply Declaration of Jerald Horowitz, dated July 5, 2007 ("Horowitz

---

[1] Plaintiffs' citations to cases where laws were not reasonably drafted to meet a legitimate purpose are easily distinguishable.  See Trio Distributor Corp. v. City of Albany, 2 N.Y.2d 690 (1957) (law requiring an extra attendant on food vending trucks struck down because, among other reasons, the law would not achieve its safety goals); Levy v. Louisiana, 391 U.S. 68 (1968) (law that barred illegitimate children from bringing a wrongful death action on behalf of their parent was struck down because classification of whether or not a child is legitimate had no relation to the nature of the wrong inflicted on the parent).

[2] Plaintiffs apparently miss the significance of the Council's reference to the original NCAA recommendations and attendant memorandum.  The memorandum from the NCAA Rules Committee called into question the veracity of the information provided by plaintiff Easton.  See Ex. D6 at 2. ("We believe that a few of Easton's more glaring distortions of information should be corrected.").  Moreover, a number of the changes ultimately adopted by the NCAA were closely associated with plaintiff Easton's settlement agreement with the NCAA – raising concerns regarding the process by which the NCAA standards were established in the first place.

2

Reply Decl."), ¶ 2; Pl. Ex. R. That plaintiffs dismiss (Pl. Reply Mem. at 2-3) these differences in performance as "too small" and the safety risks of non-wood bats as not "significantly greater" than the risks of wood bats, are of no moment. It is ultimately a judgment call which is reserved to the legislature. See FCC, 508 U.S. at 313. Thus, plaintiffs' reference to cases, where there was no basis for legislative classifications, is inapposite.[3]

Plaintiffs also misstate (Pl. Reply Mem. at 5) that New York constitutional law has a "greater willingness" than the federal precedents to strike down this type of legislation. Except in the area of criminal procedure, where New York may accord an accused greater rights under its own constitutional due process clause, New York uses the same analytical framework as the Supreme Court in considering due process and equal protection cases. See Hernandez v. Robles, 7 N.Y.3d 338, 362, 369-370 (2006); Price v. New York City Bd. of Educ, 2007 N.Y. Misc. LEXIS 3775, *39-40 (Sup. Ct. NY Co. May 7, 2007) (upholding ban of cell phones in schools as rationally related to legitimate purpose of avoiding distraction in the classroom).

Plaintiffs' commerce clause claim is similarly without merit. As already shown (see Def. Mem. at 11-12), Local Law 20 does not run afoul of the Pike standard because the purported burden on interstate commerce is not qualitatively or quantitatively different from that imposed on intrastate commerce. "[I]f no such unequal burden be shown, a reviewing court need not proceed further."[4] National Electrical Manufacturers Assoc. v. Sorrell, 272 F.3d 104, 109

---

[3] See Cellular Telephone C. v. Village of Tarrytown, 209 A.D.2d 57 (2d Dep't 1995) (legislative moratorium on cellular telephone antennas struck down because no evidence existed of adverse effects of radiofrequency emissions); People v. Bunis, 9 N.Y.2d 1 (1961) (prohibition of sale of magazines that did not have covers was too broad for legislative purpose); Defiance Milk Products Company v. Du Mond, 309 N.Y. 537 (1956); People v. Federico, 96 Misc. 2d 60 (2d Dep't 1978); Louhal Properties, Inc. v. Strada, 191 Misc. 2d 746 (Sup. Ct. Nassau Co. 2002).

[4] Plaintiffs' only basis to support a burden on interstate commerce is that New York City high schools play "dozens" of games against out-of-state teams. See Canale Decl. ¶ 13. Based upon a review of high

(2d Cir. 2001). Plaintiffs' reliance on the purported "inconsistent regulation" standard (Pl. Reply Mem. at 19-20) is also without merit. No other state regulates the type of baseball bats to be used in baseball games. Therefore, plaintiffs' arguments fail because no actual conflict exists with another state's regulation and the assertion of only a potential risk is insufficient to even make a cognizable claim. Id., 272 F.3d at 112. Accordingly, summary judgment should be granted to the defendant on plaintiffs' constitutional claims.

**POINT II**

**LOCAL LAW 20 IS A PROPER EXERCISE OF LEGISLATIVE AUTHORITY.**

Plaintiffs' legislative authority claims are similarly without merit. First, plaintiffs attempt to import talismanic significance to the word "prohibition," where none exists. The so-called "special burden" for prohibition cases invented by plaintiffs (Pl. Reply Mem. at 6-7) is nothing more than the application of the rational basis test already addressed in Point I of the City's opening and reply briefs. Plaintiffs' use of dictionary definitions (rather than statutory construction case law) (Pl. Reply Mem at 6) to distinguish between prohibition and regulation is necessarily artificial, and of no moment. All regulations prohibit some forms of conduct and, likewise, all so-called prohibitions leave some form of conduct untouched. For example, the City's law on cigarette smoking, which is widely referred to as a "ban," permits smoking in certain places. See New York City C.L.A.S.H. v. City of New York, 315 F.Supp. 2d 461, 467 (S.D.N.Y. 2004). Under plaintiffs' dictionary definitions of "prohibit" and "regulate," the cigarette ban could be referred to as a regulation because it "adjust[s] the time, amount, degree,

---

school baseball game schedules for the 2007 spring season, the City conservatively estimates that only approximately 1.25% of the games played by City teams were against out-of-state teams. See Horowitz Reply Decl., ¶ 4-7) (approximately 50 out of 4,000 games).

or rate of" cigarette smoking. Yet, it also could be referred to as a prohibition, as it "forbid[s] by authority" smoking in almost all public places. [5]   In any event, New York courts do not view the power to regulate or prohibit as different.  See City of New York v. Job-Lot Push Cart, 88 N.Y.2d 163, 167 (1996); Big Apple Food Vendors' Ass'n v. Street Vendor Review, 90 N.Y.2d 402, 406 (1974).[6]

Second, plaintiffs continue to argue wrongly (Pl. Reply Mem. at 1-4) that the City's powers are limited to only health and safety matters.  To do so, plaintiffs incorrectly (and repeatedly) suggest that the sole source of local legislative authority is General City Law Section 20(13).  See Pl. Mem. at 11; Pl. Reply Mem. at 8; Compl. ¶¶ 76, 79.  To the contrary, the New York State Constitution and the MHRL give the Council broad and express power not only to enact laws for the purpose of protecting the safety and health of persons within the City, but also to protect such persons' well-being and welfare.  See N.Y. Const. art. IX, § 2(c); N.Y. Mun. Home Rule Law § 10(1)(a)(12)(Mck. 2002); City Mem. at 17, n. 10;[7] see, e.g., Francarl Realty Corp. v. Town of E. Hampton, 2006 U.S. Dist. LEXIS 95918 (E.D.N.Y.) (reducing traffic congestion).  Thus, in addition to the safety concerns discussed in Point I above, the City also has the power to enact Local Law 20 for the City's general welfare in order to preserve the traditions

---

[5] Plaintiffs engage in the same gamesmanship in attempting to distinguish People v. Ortiz, 125 Misc. 2d 318 (Crim. Ct. Bronx Co. 1984).  The law in that case outlawed all possession of knives with a blade length of four inches or greater in any public place.  See Ortiz, 125 Misc. 2d at 318.  Yet, plaintiffs claim that the law was "not a prohibition[] of the knives."  See Pl. Reply Mem. at 6-7.

[6]   Plaintiffs do not cite to any case law holding that Article IX of the State Constitution or the State Municipal Home Rule Law exclude the power of prohibition.

[7] New York General City Law § 20(13) also provides that local legislatures have the authority to protect the "general welfare" of its citizens and visitors.

and integrity of the game of baseball and thereby improve player development. See Popa Decl. ¶¶ 28-31, 35.

Plaintiffs' unlawful delegation claims are similarly without merit. As a threshold matter, the delegation to Major League Baseball ("MLB") of standards for what wood composite bat may be used in City high school baseball games is a far cry from the delegation of penal standards presented in People v. Mobil Oil Corp., 101 Misc.2d 882 (Dist. Ct. Crim. Part Nassau Co. 1979). Mobil Oil Corp., cited by plaintiffs (Pl. Reply Mem. at 10), was later distinguished to allow a legislative body to adopt specifically designated standards of a private body and incorporate those standards into its law. See People v. Shore Realty Corp., 127 Misc.2d 419 (1st Dist. Ct. Nassau Co. 1984) (upholding incorporation into law of National Fire Protection Association standards).

Further, as discussed more fully in Defendant's opening brief at Point III, the delegation to MLB was properly limited by excluding bats that contain any metal.    It was appropriate for the City to tap into the expertise of a professional baseball organization for the narrow purpose of identifying appropriate wood composite bats, even if those standards change over time.[8] Tellingly, plaintiffs fail to mention, let alone distinguish, two cases cited by the City which make clear that delegations to private parties need not involve incorporation of a specific set of standards. See City Mem. at  15 (citing General Electric Co. v. New York State Dep't of

---

[8] If the Court were to accept plaintiffs' argument that private delegations are limited only to incorporation of highly specific, fixed standards, the Court should interpret the language in Local Law 20 requiring MLB approval of wood composite bats to refer to approval under the specific standards that were before the Council at the time of the enactment of the law. The City respectfully notes that the Court is required to interpret Local Law 20 in a manner so as to avoid constitutional infirmities. See National Ass'n of Indep. Insurers v. State, 89 N.Y.2d 950, 952 (1997); Alliance of American Insurers v. Chu, 77 N.Y.2d 573, 585 (1991).

Labor, 936 F.2d 1448, 1455 (2d Cir. 1991) (delegations to private parties are constitutional so long as the legislature gives the private party sufficient standards) and Biener v. Calio, 361 F.3d 206 (3d Cir.), cert. denied, 543 U.S. 817 (2004)).[9]

Finally, as to severability, plaintiffs argue (Pl. Reply Mem. at 15) that the Court cannot excise the one provision in Local Law 20 that exclusively concerns wood composite bats, because that provision is an "exception to the overall prohibition against non-wood bats." Plaintiffs argue that a court may not sever an "exception clause," because to do so necessarily enlarges the reach of the statute. Notwithstanding that Local Law 20 was not drafted with exceptions to a rule, plaintiffs cite no New York law that supports this proposition. See Pl. Reply Mem. at 16 (citing Boreali v. Axelrod, 71 N.Y.2d 1, 14 (1987), which struck down administrative regulations because "taken as a whole" they were invalid). Plaintiffs' reliance on federal law fails to acknowledge that the United States Supreme Court has held that state law controls the issue of severance. See City Mem. at 20 (citing Leavitt v. Jane L., 518 U.S. 137, 139 (1996)). Further, the federal case law relied upon by plaintiffs makes clear that, as under New York law, the intent of the legislature controls.[10] Here, contrary to plaintiffs' assertion (Pl.

---

[9] Plaintiffs' assertion (Pl. Reply Mem. at 12-13) that the interests of MLB and the City are "at odds" also is plainly wrong. MLB's goals are completely consistent with those of the City -- to promote traditional wood bat play. As is clear from the legislative record, MLB supported the Council's efforts to promote wood bat play. See. Horowitz Reply Decl., ¶ D29.

[10] Davis v. Wallace, 257 U.S. 478, 484 (1922) ("The meaning of the Legislature must be gathered from all they have said. . . ."); U.T., Inc. v. Brown, 457 F. Supp. 163, 170 (W.D.N.C. 1978) (severance would have "interfere[d] with the general intent of the ordinance"); see also City Mem. at 20 (citing New York case law). Plaintiffs argue (Pl. Reply Mem at 17, n11) incorrectly that there is no presumption of severability. They cite improperly to Allen v. City of Buffalo, 143 Misc. 2d 1054, 1058 (Sup. Ct. Erie Co. 1989), which was later modified on appeal to conclude that "the legislature, if partial invalidity had been foreseen, would have wished the statute to be enforced with the invalid part exscinded." Allen v. City of Buffalo, 163 A.D.2d 822 (4th Dep't 1990) (adopting by reference Catanzaro v. City of Buffalo, 163 A.D.2d 822 (4th Dep't 1990) (quoting People ex rel. Alpha Portland Cement Co. v. Knapp, 230 N.Y. 48, 60 (1920)).

7

Reply Mem. at 16), the legislative intent is particularly clear that the City Council intended to prefer wood bats over non-wood bats, and that the inclusion of wood composite bats was an incidental concern related to the durability and cost of such bats. See, e.g., Horowitz Ex. D24 (Swanson letter discussing durability and cost of wood composite bats). The fact that the Council intended first and foremost to promote wood bat play is evidenced throughout the legislative record, where the focus was almost exclusively on the effects that solid wood bats and non-wood bats have on player safety, the traditions and integrity of the game of baseball, and player development. See, e.g., Horowitz Exs. D1, D15-17. Viewing the totality of the circumstances, it is clear that the City, if unable to authorize use of wood composite bats, would have chosen to allow only wood bats. See Town of Islip v. Caviglia, 141 A.D.2d 148, 166-169 (2d Dep't 1988), aff'd, 73 N.Y.2d 544 (1989) .

## POINT III

### PRELIMINARY INJUNCTIVE RELIEF SHOULD BE DENIED TO PLAINTIFFS.

Plaintiffs have failed to demonstrate both irreparable injury (or even any injury) and a likelihood of success on the merits, and should therefore be denied preliminary injunctive relief. As to irreparable injury, the plaintiff bat manufacturers and their distributors fail to address that their claim of economic injury is entirely inconsistent with their assertion that more bats will be purchased as a result of Local Law 20, thereby increasing their profit. See Comp. ¶ 47; Pl. Ex. 9, Berg Dec. ¶ 5; Pl. Ex. 10, Navarro Dec. ¶¶ 4, 5; Pl. Ex. 11, Seiler Dec. ¶ 9; Pl. Ex. 12, Canale Dec. ¶¶ 10, 16; Pl. Ex. 17, Zitter Dec. ¶ 13.

As to any "loss of goodwill" occasioned by plaintiff bat manufacturers and their distributors -- they have brought that on themselves. Plaintiffs continue to aggressively promote and sell non-wood bats to the public, despite great concern that these bats have caused serious

injury and even death to players. Plaintiffs' concession that they engage in advertising "hyperbole" underscores that any "loss of goodwill" is self-inflicted.   The legislative record reveals a notable public-take on the advertised "power" of plaintiffs' bats from a national magazine: "Witness the world's first carbon nanotube all composite bat.  Fancy NASA speak for fully capable of beaning the third baseman. . . . Somehow, it's completely legal. $350, Easton.com." See Horowitz Decl., Ex. D17 at NYC0003522-23; see also Ex. D4.  USA Baseball, which is not affected by Local Law 20, has been very vocal in its support of high-performance non-wood bats, and therefore fares no better than its corporate sponsors in the "goodwill" department.  Plaintiffs' continued reliance on factually inapposite cases that involve malicious damage to a party's reputation for economic gain does not salvage their preliminary injunction argument.  See Pl. Mem. at 23.  Of course, plaintiffs do not, and cannot, allege such motivation in this case.

The rest of plaintiffs' assertions concerning coaches, players, and the parents of players are also without merit.  These plaintiffs principally allege that they have lost the choice to use non-wood bats in competitive high school baseball play.[11]  Plaintiffs cite no case law holding that the deprivation of an equipment choice constitutes irreparable harm.  Further, plaintiffs' attempt to distinguish case law cited by the City also fails.  Contrary to plaintiffs' assertion, Kampmeier v. Nyquist, 553 F.2d 296 (2d Cir. 1977) and O'Connor v. Board of Education, 645 F.2d 578 (7th Cir. 1981) make clear that only a wholesale denial of participation in a sport may merit injunctive relief.  Here, City youth can continue to fully participate in the

---

[11] They also allege economic harm.  However, the $350 cost of plaintiffs' non-wood bats undercuts their contention that the parents of players will suffer economic injury as a result of Local Law 20 because they may have to purchase an additional set of bats at the $50-$60 price quoted by plaintiffs.  See Pl. Reply Mem. at 24.  Thus, any such difference in cost, if it does exist, remains a de minimis expense that does not warrant a preliminary injunction.  See City Mem. at 21-22.

game of baseball, and will enjoy the benefits of enhanced safety, athletic development, and tradition.

Moreover, plaintiffs' contention that wood bat play will be less fun and competitive, and will lessen college scholarship prospects, finds no evidentiary support, ignores the proliferation and significance of wood-only leagues (including in college baseball) and ignores the fact that only wood bats are used in professional baseball play. See Popa Decl; ¶¶ 28-36. The legislative record is clear that leagues that have switched to wood have had great success – including increased participation. See Ex. D17 (Guarino testimony); Ex. D23; Ex. D24 (Swanson statement).   Most importantly, plaintiffs, as set forth above and in the City's opening brief, have clearly failed to demonstrate any likelihood of success on the merits.

## CONCLUSION

**SUMMARY JUDGMENT SHOULD BE GRANTED TO DEFENDANT AND PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION AND SUMMARY JUDGMENT SHOULD BE DENIED.**

Dated:      New York, New York
            July 6, 2007

                    MICHAEL A. CARDOZO
                    Corporation Counsel of the City of New York
                    Attorney for Defendant
                    100 Church Street, Room 5-189
                    New York, New York 10007
                    (212) 442-0589

            By:

                    Jerald Horowitz (JH8395)
                    Assistant Corporation Counsel
                    Administrative Law Division

10